No. 4602.

STATE OF LOUISIANA ex rel. E. MERLE v. A. DUBUCLET, Treasurer, STATE ex rel. JOHN CHAPUS v. THE SAME—Consolidated.

The objection that this is a suit against the State, for the instituting of which permission has not been obtained from the Legislature, is not well founded. It is a mere application to a court of competent jurisdiction asking for a writ of mandamus against an officer of the State, commanding him to perform one of the duties of his office, to wit: to pay the sums which the Auditor, in conformity to law, has ordered him to pay.

The warrants held by the relator are sufficiently described. Their number, date, amount, and in whose favor they were issued, are specifically set forth, and the petition alleges that they are judicial warrants. The list containing these details was offered in evidence and received without objection, and there is no charge that they are spurious, and that the signatures thereto are not genuine.

No law has been exhibited which requires the Treasurer to give preference of payment to warrants of older date and lowest number, nor has it been shown that such has been the practice in the Treasurer's office. On the contrary, it has been the reverse.

It has been shown to this court that, while its doors remained hermetically closed against certain bona fide creditors of the State, it lay all unlocked to the occasions of others, who had no right of precedence over their competitors. All men are equal before the law, and all men, having equal claims upon the State for the payment of a common debt, have equal rights upon the common treasury.

A mandamus can properly issue against the Treasurer only when he has money, and illegally withholds it from one entitled to be paid. If he refuses to pay one creditor of the State and gives an illegal preference to another and pays to him all the money in his hands, he may make himself amenable to the law, which fixes his duty and imposes heavy penalties for the dereliction of that duty, but it is not a proper case for a mandamus.

To order the Treasurer in this proceeding, and under the circumstances of the case, to pay whenever the treasury may be replenished, is equivalent to a judgment on an ordinary proceeding, and would give in effect a preference to the relator, or is tantamount to an order in advance to the Treasurer to do what he has not refused to do, and what it must be presumed he will do, until the contrary be shown, as the presumptive evidence is in favor of an officer doing his duty.

APPEAL from the Superior District Court, parish of Orleans. *Hawkins*, J. *A. & W. Voorhies*, for plaintiffs and appellants. *A. P. Field*, Attorney General, for defendant and appellee.

MORGAN, J. Petitioner avers that he is the holder of certain judi-

cial warrants, amounting to $12,501 99, issued by the Auditor of Public Accounts, in payment of salaries of certain district and parish judges and district attorneys; that at various times he has presented these warrants to the State Treasurer for payment out of the general fund, appropriated for that purpose, but that the Treasurer has declined to pay them, averring that there are no funds which he can dispose of for that purpose, he being restrained from so doing by decrees of court rendered between other parties. He avers that there are funds in the treasury sufficient to pay his warrants, and that if the funds have been otherwise disposed of, they have been illegally and improperly disposed of. He avers that the same combination by which his rights have been baffled will continue to defeat him unless the courts afford him a remedy, and he prays for a mandamus against the Treasurer commanding him to pay his warrants out of any funds in the treasury, appropriated for that purpose.

Henry N. Benjamin intervened in this proceeding, before the treasurer had filed his answer. He avers that he is the holder of warrants amounting to about $45,000, issued by the Auditor in payment of the salaries of constitutional officers. He avers that an injunction issued in suit No. 7847 of the docket of the Eighth District Court, entitled Henry N. Benjamin v. Antoine Dubuclet, Treasurer, whereby the said Treasurer was injoined and prohibited from paying any warrants out of the general fund, until those held by him should be paid and satisfied. He prays that Merle's demand may be rejected, and that the Treasurer be directed to obey and respect the injunction issued in said suit.

The Treasurer answers that if he has moneys to the credit of the general fund, they have been used in payment of warrants of equal rank with relators, which he was bound to do by reason of the injunction in the case of Benjamin, and that the amount of said injunction has not been paid.

Merle's rule was fixed for trial on the eleventh October. The Treasurer's answer was filed on the twenty-third October.

There are other intervenors in the suit, but their rights do not seem to have been passed upon, and they have not complained of the judgment. It is not, therefore, necessary that we should notice them.

On the ninth January, 1873, the Treasurer, through counsel and the Attorney General, filed a supplemental answer, and, in reply to the petition of relator, and for reason why his demands should not be rejected says:

*First*—That this is a suit against the State, which can not be instituted without permission of the Legislature, and that this permission has not been obtained.

*Second*—That he can not plead with certainty, because the relator has not described the warrants which he pretends to hold with such certainty as would enable him to plead; that he has not given number, date, amount, to whose order, by whom indorsed, on what fund drawn, nor for what consideration they were drawn; all of which particulars it is necessary should be set forth, to enable him to plead with certainty or with safety.

*Third*—That by law, and by the advice of the Attorney General, he is to give precedence to warrants of oldest date and lowest number; that there are large amounts of warrants outstanding of older date and smaller number than any held or claimed to be held by relator, and more than enough to absorb the entire funds of the treasury.

*Fourth*—That there are injunctions issued by the Eighth District Court, now forming part of the records of this (Superior) Court, in the suits of A. Bonita *v.* The State Treasurer, and H. N. Benjamin *v.* The State Treasurer, injoining him from paying any warrants out of the general fund to any person until the warrants claimed in those suits shall first have been paid; that said injunctions were issued and granted after a due trial, and are, so far as the Treasurer is concerned, final.

*First*—This is not a suit against the State. It is a mere application to a court of competent jurisdiction, asking for a writ of mandamus against an officer of the State, commanding him to perform one of the duties of his office, *i. e.*, to pay the sums which the Auditor, in conformity with law, has ordered him to pay.

*Second*—The warrants held by the relator are sufficiently described. Their number, date, amount, and in whose favor they were issued, are specifically set forth, and the petition alleges that they are judicial warrants. The list containing these details was offered in evidence and received without objection, and there is no charge that they are spurious, or that the signatures thereto are not genuine.

*Third*—We have not been referred to any law which requires the Treasurer to give preference of payment to warrants of oldest date and lowest number, nor do we know of the existence of such a law. Neither has the Treasurer shown that such has been the practice of his office. On the contrary, it has been the reverse. In the list of warrants paid by him, and furnished by him in evidence, in the Benjamin injunction, it is rare that the numbers follow each other, even approximately, and in many instances they are far apart. For example: The lowest number of the warrant he paid on the third October, was No. 2319; the highest, 2772. On the eighth, the lowest number was No. 56; the highest 3734. On the ninth, the lowest number was No. 111; the highest 3006, and so on.

9

*Fourth*—There is no evidence in the record of any injunction against the Treasurer, which would, or could have prevented him from paying the relator's claim if there was money to pay with. He alleges in his answer that he has been injoined from doing so by process issued in the cases of Bonita and Benjamin.

So far as the Bonita case is concerned, there is no proof of there being any such proceeding before us.

As to the Benjamin injunction, it appears that one did issue as alleged, in suit No. 7792, but the amount claimed in that suit was $3930, and the judgment in this case is the only one in the record which compels him to pay Benjamin anything, or which gives him any preference. It would appear, however, that there is another suit of the same nature against the treasurer, also instituted by Benjamin, under the No. 7847, in which he claims $45,000, but this record is not in evidence. Admitting it to be what the intervention claims it is, still it can not be successfully opposed to the present relator. The evidence shows that, as audited by the Auditor, $78,348 72 were received by the treasurer, between the twenty-fifth September and the fifteenth October. If, therefore, he had paid the whole amount claimed by Benjamin in both of his suits, there would still have remained some $30,000, out of which the relator's claim could have been paid. But the testimony shows that all of Benjamin's warrants, or those referred to in his petition, at least, have not been paid. Auguste, who collected them, says he had been paid about $40,000; this would have left over $38,000 in the treasury. Neither can the treasurer say that he kept the money in the treasury, for the evidence shows that while he received $78,348 72, he paid out $75,986. He must, therefore, have paid to others besides Benjamin. Benjamin's injunctions seem to have been used as a shield by the treasurer, to protect him against the payment of Merle's warrants, but they were no obstacle to his paying others. That he did pay others, while refusing to pay Merle, is apparent. Auguste testifies that he had collected $40,000, leaving $17,000 still to be collected. As Benjamin never claimed more than $50,000, it follows that he must have been collecting for some one else. Indeed, he testifies that he was. He says, " On the second October, I made a demand for a settlement for Newman." Merle said, " I have a warrant for $625, that I want to be paid." " I told him that I *collected under the injunction of Benjamin*, and had a right to be paid."

This evidence is more than substantiated by the fact that a comparison of the warrants described in the list attached to the first injunction with the list of those paid by the treasurer, shows that none of the warrants first described appear on the list furnished by the treasurer. We therefore believe that when Auguste testifies that when col-

lecting under the Benjamin injunction, he was collecting Newman's warrants, he swore to the truth.

The record discloses the fact that the treasurer, although he filed an answer to the suits brought against him by Benjamin, neither appealed from the judgments when they were rendered against him, nor asked for an appeal, nor applied to the Attorney General to take one, nor did any thing to prevent their execution, although, practically, they effectually bolted and barred the treasury against the claims of every citizen who was a creditor of the State, except those in whose favor they were rendered and others who were allowed to profit by them.

An application for an appeal was made, but not by the treasurer. Bonis applied for one, alleging that he was the owner of warrants which the treasurer would not pay on account of these injunctions, but his application was refused by the judge, who considered that no appeal would lie from an order granting an injunction. But this was not an effort to appeal from an injunction *pendente lite*. It was an appeal asked from a judgment perpetuating an injunction, and commanding the payment of money, and from such a judgment it is clear that an appeal does lie.

A thorough and careful examination of the record has reluctantly forced the conclusion upon us that, in so far as relates to the present appearers, the business of the treasury department has been conducted in the interest of certain favored individuals, who, acting upon proceedings having the color of law, have managed it in their own interest; that while its doors remained hermetically closed against certain *bona fide* creditors of the State, it lay all unlocked to the occasions of others, who had no right of precedence over their competitors. All men are equal before the law, and all men, having equal claims upon the State for the payment of a common debt, have equal rights upon the common treasury.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be reversed; and it is further ordered, adjudged and decreed, that a writ of mandamus issue directed to the State Treasurer, Antoine Dubuclet, commanding him to pay the warrants annexed to the relator's petition, out of any funds in the treasury appropriated for that purpose, without any reference to any injunctions to the contrary which may have been issued to him.

---

JOHN CHAPUS *v.* ANTOINE DUBUCLET, State Treasurer.

MORGAN, J. This case is similar to the one just decided in the case of Merle *v.* Dubuclet.

For the reasons therein given, it is ordered, adjudged and decreed that the judgment of the lower court be reversed; and it is further or-

dered, adjudged and decreed, that a writ of mandamus issue directed to the State Treasurer, Antoine Dubuclet, commanding him to pay the warrants annexed to the relator's petition, out of any funds in the treasury appropriated for that purpose, without any reference to any injunctions to the contrary which may have been issued to him.

## ON REHEARING.

HOWELL, J.   A rehearing was granted in this case "for the purpose of explaining the decree," which is in the following words:   " It is ordered, adjudged and decreed that the judgment appealed from be reversed, and it is further ordered, adjudged and decreed that a writ of mandamus issue, directed to the State Treasurer, Antoine Dubuclet, commanding him to pay the warrants annexed to the relator's petition out of any funds in the treasury appropriated for that purpose, without reference to any injunctions to the contrary which may have been isued to him."

It is contended on behalf of the treasurer that this decree. "compels him to pay the warrants annexed to the petition by preference over all other warrants, when there was no money in the treasury at the time they are presented out of which they could be paid," which is a contingency in which a mandamus should not be granted, whatever may be the personal responsibility of the treasurer for his acts.   The facts in this connection, as we find them, are that when the relator presented his warrants there was money in the treasury, but the treasurer paid it out by preference to one Benjamin, or his agent, in obedience, as he asserted, to an injunction from the Eighth District Court for the parish of Orleans.   We come to the conclusion, and we are still of the opinion that the said injunction was and is wholly without any legal effect, and did not justify the treasurer in his action in the premises.   But we erred in ordering a writ of mandamus to issue when there was no money.   Said writ properly issues against the treasurer only when he has money and illegally withholds it from one entitled to be paid.   If he refuses to pay one creditor of the State and gives an illegal preference to and pays all the money in his hands to another, he may make himself amenable to the law, which fixes his duty and imposes heavy penalties for dereliction of that duty ; but it is not a proper case for a mandamus.

To now order the treasurer in this proceeding to pay, under such circumstances, whenever the treasury may be replenished, is equivalent to a judgment in an ordinary proceeding, and would in effect give a preference to the relator, or to an order in advance to do what he has not refused to do, and what it must be presumed he will do, until

NEW ORLEANS, FEBRUARY, 1874.    133·

State ex rel. Merle v. Dubuclet, Treasurer—State ex rel. Chapus v. The Same.

the contrary be shown, as the presumption is in favor of an officer·
doing his duty. We may very well say, that the injunction invoked
·is no legal protection or excuse, but the claim secured by that injunc-
tion can not always exist. Indeed the record shows that it was paid
or nearly so at the time of the trial of this case in the lower court.

While our opinion of the acts of the treasurer in this whole matter
are unchanged, still we are not ourselves authorized under the facts ·
and the law to make the mandamus peremptory. Instead of simply.
explaining, we must reverse our former decree.            :

It is therefore ordered that our decree herein be set aside, and that ·
the judgment of the lower court be affirmed.

STATE ex rel. JOHN CHAPUS v. ANTOINE DUBUCLET, State Treasurer.

HOWELL, J.   For the reasons just given in the case of the State ex
rel. E. Merle v. Antoine Dubuclet, State Treasurer, it is ordered that the
decree heretofore rendered by us be set aside, and that the judgment
appealed from be affirmed.

MORGAN, J., *dissenting*.   The treasurer complains of the judgment
pronounced by us in this case, in this, that "it compels the treasurer to
pay the warrants annexed to the petition by preference over all other
warrants, when there was no money in the treasury at the time they
were presented out of which they could be paid." I do not see how
the decree can be so interpreted. Merle, the holder of a number of
warrants payable out of a certain fund, was asking for their payment.
The treasurer refused payment on the ground that he was forced to
apply all the money coming into that fund first to the payment of
warrants drawn against it, in the hands of one Benjamin, by reason of
an injunction to that effect. We simply declared that Benjamin had
no greater rights than Merle. The decree is that the treasurer pay the
relator's warrants out of any funds in the treasury appropriated for
that purpose, without any reference to any injunction to the contrary
which may have been issued to him. The decree, I think, meant that ·
Merle had the same right to be paid out of the fund in question that
Benjamin had, and I do not see how it can be tortured into the con-·'
struction that he should be paid "by preference over all other
warrants."

Neither is the statement in the application for a rehearing that "at the
time they were presented there was no money in the treasury out of
which they could have been paid," correct. The contrary is the fact,
and it is of this which Merle complains, and it is this which we thought
he was entitled to complain of. The record shows that while he was
being refused payment, upwards of seventy thousand dollars came

into the fund upon which his warrants were drawn, while the injunction in favor of Benjamin, which the treasurer pleaded as a reason for not paying him, only held a little more than half of that sum. The record also shows that Newman's warrants were paid under Benjamin's injunction. These facts forced upon us the conviction, at the time the case was argued, that the treasury was being used in the interest of certain favored parties. I am of that opinion still. We thought then that the treasurer had no right thus to administer the trust reposed in him. I still think so. We thought then that we could force the treasurer to perform his duty, and upon this point my mind remains unchanged. We thought then that he had shown a preference where he should have been impartial. I think so still. We ordered him simply to do his duty, that is, to pay the warrants held by Merle precisely as he paid the warrants held by Benjamin and others having the same right against the same fund, and I think still that he should be held to it.

Neither do I think that the reason urged for a rehearing, that if Merle's warrants are paid "they will have to be paid out of money which has since come into the treasury," a good one. Of course if the treasurer has paid what money there was belonging to a certain fund, he can not pay the same money over. But he can pay when the fund is replenished, and all he was ordered to do was to pay out such funds as he had to those who were equally entitled to it, and not to give it to favorites, or use for excuse an injunction which did not cover the case.

Entertaining these views, I do not think the decree herein pronounced needs any further explanation.