WILLIAM MONTGOMERY and another *v.* CHARLES LEVISTONES.

The possession by the creditor of property of the debtor, with the consent of the latter, for the purpose of paying himself out of its hire, is an acknowledgment of the debt, interrupting prescription.

Where a debtor acknowledges a debt and asks for indulgence, it is a tacit renunciation of any prescription which may have been required. C. C. 3424.

APPEAL from the Commercial Court of New Orleans, *Watts, J.*

*Rawle,* for the appellants.

*Elwyn,* for the defendant.

MORPHY, J. The defendant is sued on a note made at Savannah, on the 29th of October, 1835, by which he promised one day after date to pay to Joseph Cumming the sum of $5000. The note was endorsed by the payee to Joseph Cumming & Co., who transferred it to the petitioners. It is alleged in the petition,* that the defendant, within five years, has frequently acknowledged and promised to pay said note; and, on the 1st of May, 1840, did pay on account thereof, the sum of $3457 93, thus leaving due a balance of $1542 07, for which judgment is demanded, with interest at seven per cent from the 1st of May, 1840. The answer pleaded the general issue, and set up the plea of prescription. This plea having been sustained below, the petitioners have appealed.

The evidence shows, that Levistones had left in the possession of Joseph Cumming, some negroes and jack-screws, the hire of which was by agreement to be applied to the reduction and pay-

* The petition was filed on the 1st April, 1843.

ment of this note. The account for the hire was annually made up, and sent to the defendant, who acknowledged the receipt thereof. As the sums received, which formed a great many items, could not be endorsed separately on the note, they were noted down in an account in the books of Cumming & Co., who, on the 1st of May, 1840, made an endorsement on the note, by which they acknowledged to have received $3457 93 on account of it, with interest up to that date. Why Cumming & Co. did not continue to receive, after this time, the hire of the slaves in payment of the note, or what became of the slaves, the record does not inform us. On the 1st of February, 1841, Joseph Cumming & Co. wrote to the defendant, requesting him to pay on his note to them $1000 to W. & J. Montgomery, and wishing him to say what he could do in the matter, &c. To this letter, the defendant, after acknowledging its receipt, replied in the following terms: " With the matter of Montgomery's, nothing can be done at this time. We are free to confess things have not gone on as we expected, and must for a time be indulged. The subscriber has lost heavily by the falling of stocks, property, and people's failing, but is in hopes all will in time be honorably settled. I assure you, that the services that have been rendered me cannot be forgotten; nor are we ungrateful, as hereafter may be proven. What other men say is of no consequence, as nothing but *honor* and *honesty* is our motto." It is shown that, at the date of this answer, the note sued upon was in the possession of the plaintiffs, and they had no other claim or business with the defendant.

It is clear, that the holder of a note cannot, by any endorsement he may make upon it, interrupt prescription, without the knowledge or consent of his debtor ; but in the present case, the receipt, or endorsement on the note can hardly be considered as made entirely without the assent of the defendant. It was a credit given for a number of small payments made during several preceding years, with the knowledge and express consent of the defendant, and out of the hire of property which he had left in the possession of his creditor during that time, as a security for the payment of his debt. This possession of the defendant's property by Cumming & Co., for the purpose of being paid with

the hire which might be derived from it, was a standing acknowledgment, on the part of the defendant, of his indebtedness. It prevented prescription from running, in the same manner as, in the case of a pledge, prescription does not run as long as the thing pledged remains in the possession of the pledgee. Every successive payment moreover, made out of the hire of the defendant's property under his agreement with Cumming, operated as an interruption of the prescription. 2 Troplong, Nos. 534, 618. 1 Rob. 557. But even if the circumstances above stated created no interruption or suspension of prescription, it appears to us, that the defendant's letter of the 13th of February, 1841, contains, on his part, a renunciation of any prescription that might have been acquired. " Tacit renunciation," says the Civil Code, art. 3424, " results from any fact which creates a presumption of the relinquishment of the right acquired by prescription." Notwithstanding some vagueness in his language, the defendant, in his reply to the letter of Cumming & Co., clearly acknowledges his indebtedness, craves the indulgence of his correspondents, and expresses his hope that in time all would be honorably settled. This answer is inconsistent with the idea that he intended to avail himself of any right acquired by prescription ; but, on the contrary, implies that he expected to settle this debt honorably, and only wanted some indulgence in consequence of the losses he had experienced. This case can hardly be distinguished from that of *Shiff* v. *Hertzogg*, in which indeed the language used by the debtor was more explicit and positive, but to the same effect. 12 La. 455. There is evidence in the record, that the legal rate of interest in Georgia is eight per cent per annum, and that, when not otherwise expressed in the note, it runs from the time it becomes due ; but the petition claims interest only at the rate of seven per cent.

It is, therefore, ordered, that the judgment of the Commercial Court be reversed, and that the plaintiffs recover of the defendant the sum of fifteen hundred and forty-two dollars and seven cents, with interest at the rate of seven per centum per annum from the 1st of May, 1840 until paid, with costs in both courts.