OVERTON, J.
 

 Mrs. Margaret Blanche Mereno, widow of Joseph Pilie. died in the city of New Orleans on April 9, 1924. Her succession was opened, and an administrator was appointed. During the course of the administration Miss Marie Pilie, a daughter of the deceased, claimed to be a creditor of the succession for money loaned by her to the deceased, in small amounts, during a period of nearly nine years; the total amount loaned, according to her contention, aggregating $1,-238.66. She contends that these loans were made to assist her mother in paying a mortgage, granted by the latter on her home to a building and loan association, for the purpose of obtaining funds to make necessary repairs on the property mortgaged. Miss Pilie presented her claim to the administrator, but he refused to recognize it. When the latter filed an account of his administration, Miss Pilie’s claim was not carried on the account. She therefore filed an opposition to the account, praying that it be amended so as to carry her claim for the full amount of $1,-238.66, with 5 per cent, per annum interest on each loan, going to make up said sum total, from the date each was made. The administrator filed an answer to the opposition, denying all of the allegations thereof, and pleading against Miss Pilie’s demand the prescriptions of three and ten years. It is this opposition that comes before us on an appeal from a judgment recognizing and enforcing, to its full extent, Miss Pilie’s claim.
 

 The evidence discloses that, with the exception of certain personal property, consisting almost entirely of household effects, and a lot in a cemetery, the only asset belonging to the deceased was her home. This property, that is, the home of the deceased, something over eleven years prior to her death, was greatly in need of repair. In order to obtain funds with which to make the repairs, the deceased borrowed the required amount from a building and loan association, and granted a mortgage on the property to secure the loan. At the time the mortgage was granted, Miss Pi-lie testifies that it was understood that she and the remaining children of the deceased were to assist their mother in paying the mortgage by lending her amounts from time to time with which to pay her dues in the building and loan association. The remaining children, the trial judge found, and we think correctly so, were unable, when the time came, to assist their mother in discharging the mortgage. The burden, therefore, fell upon Miss Pilie. She testifies that out of her wages she advanced her mother, from time
 
 *87
 
 to time, or practically from month to month, during a period of nearly nine years, the amounts necessary to enable her mother to pay her dues in the building and loan association. With one exception it appears that the amounts so advanced ran from $12 to $13 a month. Miss Pilie testifies that it was understood between her and her mother that the latter would repay her the amounts advanced in the event she should sell the property, and, in the event she did not sell it, then that she should be repaid at her mother’s death out of the latter’s estate. She also testifies that, as she made the loans, or soon thereafter, she took receipts from her mother, showing, in each instance, the amount advanced. She has produced a number of receipts, signed by her mother, showing in the aggregate the principal of .the sum which she claims. These receipts, save as to amounts and dates, are in substance alike. In order to show their tenor and substance we shall cpiote one of them. The one which we have selected for that purpose appears to have been the first given, and reads as follows:
 

 “1/13/13.
 

 “Received from Marie Pilie this day thirteen dollars to pay Union Homestead Association on money borrowed for repairs at 1240 N. Villere St.
 

 “$13 no/100. [Signed] Blanche Pilie.’’
 

 One of the contentions of the administrator is.that the proof is insufficient to justify the allowance of Miss Pilie’s claim. This contention is based largely on the theory that Miss Pilie’s claim exceeds in the aggregate $500, and that, under article 2277 of the Civil Code, a contract for the payment of money, not reduced to writing, which exceeds $500, must be proved by at least one credible witness, and corroborative circumstances. Preliminary to passing upon this contention, it may be proper to observe that the receipts held by Miss Pilie, by themselves, do not fully show an obligation to repay the money received, though they are so worded as to strongly suggest the existence of such an obligation. Hence it cannot be said that the contract to repay was reduced to writing, for the receipts, by themselves, do not show such a contract or obligation. On the other hand, it may be said with plausibility that the amount claimed by Miss Pilie consists in reality of a number of loans, each less than $500, and it may be said that there is authority to the effect (Rossignol v. Triche, 28 La. Ann. 144) that, where the amount claimed consists of'a number of items, none of them exceeding $500, the evidence of a credible witness, swearing that each item is due, is sufficient, though the aggregate of the items exceeds $500. However, aside from the observation last stated, and viewing the amount claimed as if it were one loan, still we think that the evidence adduced is sufficient to establish the loan. We so think, because the evidence of Miss Pilie, and she seems to be a credible witness, that she loaned the money to her mother is supported by the receipts. We think that'the receipts support the evidence of Miss Pilie, because each shows upon its face that the money was received by the mother to pay the homestead association, or, in other words, to pay the mortgage granted by the mother on her home to obtain funds for its repair. This debt was the debt of the mother and not of the daughter. It cannot be said, we think, that the delivery of this money to the mother was a mere contribution by the daughter to the mother with no hope or expectation that the money would be repaid, for, if it were such, the mother hardly would have gone to the trouble of giving her daughter receipts for the amounts received during a period of nearly nine years, and the daughter hardly would have gone to the trouble of receiving and preserving the receipts, or of permitting her mother to go to that trouble. Our conclusion is, as was that of the trial judge, that the loan has been fully established.
 

 We now reach the prescriptions of
 
 *89
 
 three and ten years pleaded hy the administrator. Article 3538 of the Civil Code provides, among other things, that an action for the payment of money lent is prescribed by three years. Article 3544 of the Civil Code provides that, in general, all personal actions, except those before enumerated in the Code, are prescribed by ten years. These prescriptions, of course, do not begin to run •until the debt against which they are pleaded is demandable. On the trial oftthe case, Miss Pilie attempted to show by parol evidence that it was agreed and understood between her and her mother that the debt arising from the loan or loans should not be demandable until her mother should sell the property, or, in the event the property should not be sold, then until her mother’s death. The administrator objected to this evidence on the ground that, under article 2278 of the. Civil Code, parol evidence is not admissible to-prove an acknowledgment, or promises of a party deceased, to pay any debt or liability, in order to take such debt or liability out of prescription, or to revive the same after prescription has run or been completed, or to prove an acknowledgment or promise to pay any debt or liability evidenced by writing, when prescription has already run. It may be observed, however, that the purpose of the evidence, in this instance, was not to take the debt out of prescription by showing an acknowledgment or promise to pay it, after prescription had ac•crued, but merely to establish when the debt matured, or became due and demandable, in order to show when prescription began to run. 'The parol evidence offered was perfectly competent for that purpose. It consists of that .given by Miss Pilie. This evidence shows that it was agreed and understood that the indebtedness arising from the money lent was not to mature and become demandable until Miss Pilie’s mother sold the property mortgaged, or, in the event she did nót sell it, .then until the death of her mother. Her evidence, we think, is supported by all of the facts and circumstances of the case. Miss Pilie’s mother had no means of returning the loan unless she sold the property, and, if she did not sell, then the only way that her daughter could expect to be paid would be out of the estate of her mother. Such an arrangement as to the maturity of the debt was to the interest of both mother and daughter. We find, therefore, that the obligation to return the money loaned was not to mature until the arrival of one of the two events above stated. Since the property was not sold, the indebtedness did not mature until the death of Miss Pilie’s mother. Within one year after the death of her mother, Miss Pilie filed her opposition to the administrator’s account, and the administrator filed his answer to the opposition. Hence, as prescription does not begin to run until the debt becomes demandable, and as its course, in this instance, was interrupted by the timely filing of the opposition, it cannot be said that the prescription of three years pleaded is well founded, and it follows, if the prescription of ten years may be deemed applicable to an action 'for money lent, that it also is not well founded. We may add that, in holding that prescription does not begin to run against an indebtedness for money lent until the maturity of the indebtedness, we do not, in our view, come in conflict with the ruling made in Lagarde v. Dabon, 98 So. 744, 155 La. 25. In that case it was considered that the indebtedness, if it should be found to be for money lent, was payable on demand, and hence it was said that, in the event of such a finding, the prescription there pleaded ran against each loan from the date it was made. In the present case the indebtedness was not payable on demand.
 

 The administrator also contends that tbe trial judge erred in allowing 5 per cent, per annum interest on each advance of money from the date the advance was made'. • In this
 
 *91
 
 contention we think the administrator is correct. There was no written agreement to pay conventional interest. Such being the case, the only interest allowable is legal interest and such interest runs only from the date of the maturity of the indebtedness. Civil Code, art. 1938; Code of Practice, art. 554. Since the indebtedness did not become due till the death of Miss Pilie’s mother, which was on April 9, 1924, interest is allowable only from that date, and the judgment will have to be amended accordingly.
 

 For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be amended by allowing interest on said sum, at the rate of 5 per cent, per annum, from April 9, 1924, until paid, and, as thus amended, that said judgment be affirmed, the costs of appeal to be paid by appellee.