No. 3728

Second Circuit

(Second Division)

___

## MOORE v. OLIPHANT

___

(November 18, 1931. Opinion and Decree.)
(December 9, 1931. Rehearing Refused.)
(January 4, 1931. Writ of Certiorari and
Review Refused by Supreme Court.)

___

Harry V. Booth of Shreveport, attorney for plaintiff, appellee.

Thigpen, Herold & Cousin, of Shreveport, attorneys for defendant, appellant.

TALIAFERRO, J. This suit was brought by plaintiff to recover $1,966 alleged to have been loaned defendant in amounts and on dates as follows: $500 January 14, 1921; $380 July 8, 1921; $86 October 18, 1921; $400 April 10, 1922; $300 August 20, 1925; $300 September 9, 1925.

Plaintiff alleges that from July, 1920, to March, 1927, she was employed by Saenger Drug Company, in Shreveport, working under the supervision and direction of its manager, Harry K. Oliphant, defendant herein; that while thus engaged defendant importuned her to make him the loan of $500 on or about January 14, 1921, agreeing to pay her 7 per cent interest thereon, and stating that he would repay the money upon petitioner's demand, allowing him two weeks' grace to do so, and that on these terms and conditions the loan was made; that under the same terms and conditions she loaned defendant the other amounts, named above, and on the dates stated, but for none of the loans did she take any note or other written evidence.

She alleges that defendant, during her employment with said Saenger Drug Company, on numerous occasions, to her and to others in her presence, acknowledged owing her all of said amounts; that she left said employment in March, 1927; that on or about November 1, 1925, she made first demand for payment of defendant, and he then agreed to make payment to her of the amounts due; that following this demand she made several other demands upon him, from time to time, until March, 1927, which were invariably met with a promise to pay; that when she left the employment of said company, at her request, defendant promised to deposit the money due her, not later than July first, following, in a banking institution in the city of Shreveport, but did not do so.

Defendant admits the employment of plaintiff by Saenger Drug Company and that she was under his supervision and direction as manager thereof, but denies all other allegations of her petition. He specifically avers that he never at any time borrowed any money from plaintiff, and never at any time promised to pay her any money.

Judgment was rendered in favor of plaintiff for $380 with legal interest from January 14, 1921, and for $86 with legal interest from October 18, 1921. Defendant appealed.

In this court, defendant filed a plea of prescription of three years under article 3538 of the Civil Code, in bar of plaintiff's demand.

Plaintiff produced and filed in evidence her two checks in favor of defendant, and by him indorsed, for the amounts, respectively, for which judgment was rendered by the lower court. We assume that the court concluded that plaintiff's testimony was sufficiently corroborated by these checks as to justify a finding in her favor to that extent, but in other respects denied her relief.

## PLEA OF PRESCRIPTION

This suit was filed April 3, 1928. At that date, all of the alleged loans to defendant were very much over three years old, excepting the two of $300 each, made August 20 and September 9, 1925, respectively. It is admitted that the loans were repayable on demand, allowing two weeks grace; in other words, they were what are commonly known as "demand loans," and could be called at the option of plaintiff.

Plaintiff's contention is that as the loans were payable on demand, the current of prescription did not begin until after making of demand for payment, while defendant argues that prescription on a demand obligation commences with the date of its creation.

Under article 3538, Civ. Code, action to recover loan of money is barred by the prescription of three years. This prescription, of course, sets in at maturity of the loan, or, in other words, when the owner of the loan has the legal right to demand its payment or provoke suit to enforce payment.

It has invariably been held, so far as we are advised, that prescription on a note payable on demand begins to run with date of note. This was held by our Supreme Court in the cases of Darby v. Darby, 120 La. 847, 45 So. 747, 14 L. R. A. (N. S.) 1208, 14 Ann. Cas. 805; Cassou v. Robbert, 166 La. 101, 116 So. 714.

And in Harman v. Claiborne, 1 La. Ann. 342, it was held that a check payable to order prescribed five years from date.

The reason for the application of this rule to obligations evidenced by writing applies, in our opinion, with equal force to simple loans not evidenced by writing. We can see no reason why there should be any difference. The following cases involved loans of money, and the principle under discussion in the instant case was to some extent considered and touched upon by the court therein, viz.: Succession of Llula, 44 La. Ann. 61, 10 So. 406; Succession of Mereno, 161 La. 84, 108 So. 133; Lagarde v. Dabon, 155 La. 31, 98 So. 744.

In the last of these cases, the court remarked:

"Simple loans are prescribed * * * from the time each advancement is made."

Plaintiff, in supplemental brief filed after submission of the case, cites some decisions from other jurisdictions holding that the statute of limitations as against demand loans and due bills payable on demand only began to run from the date a demand for payment is made, but in view of the pronouncements of our own court on this question, we do not feel authorized to accept these decisions as controlling in the présent case.

The plea of prescription is held by us to be good as against all of the items of plaintiff's demand, save the two loans of $300 each, made in 1925.

Plaintiff alleges and testified that she issued to defendant a check for $300 against her account with Commercial National Bank on September 9, 1925, to cover the loan of that date she made to him, and that on August 20th previous, she made him another loan of $300, and that to cover this loan she gave him several of her salary checks and some cash money.

She filed in evidence statements of her accounts with two banks in Shreveport. These show that debits were made thereon for each of the amounts she claims defendant is due her, excepting the one for $300 of August 20, 1925. Her account with the Commercial National Bank was debited with $300 on September 9, 1925, and on next day the account of defendant with First National Bank was credited with like amount.

Plaintiff produced checks of $380 and $86 issued by her to defendant, but not the others. Her explanation of her inability to produce the other checks claimed' by her to have been issued to defendant for these loans was that she did not receive

them from the bank; that her mail was sent in care of the drug company for whom she worked, and she insinuates that defendant purposely withheld it from her; that she intercepted the postman before reaching the drug store and secured from him the letter from the bank containing the two checks which were filed in evidence.

While plaintiff was in the employ of the Saenger Drug Company, defendant assisted her often in the transaction of business matters of her own. She purchased some building and loan stock which was being paid for by installments. He advised her in that matter, and he looked after the payments after she ceased to work for his company. In April, 1927, she wrote defendant from California requesting him to keep up her building and loan stock payments of $30 per month. In August, 1927, she wrote defendant requesting that he deposit $1,800 in Commercial National Bank to her credit. He admits neither of these letters was answered by him. On her return to Shreveport the following September, she called him on the phone and asked him if he had deposited the $1,800 in the bank as requested, and he replied by asking her to come to the store as "he wanted to talk to her." She did not comply with his request. It is passing strange that if defendant was not due plaintiff any amount why he would not have answered her' letter requesting him to make deposit to her credit in a bank, denying the indebtedness, and it is equally strange that when asked about the deposit on the phone he did not deny owing her, but on the contrary requested her to come to the drug store "as he wanted to talk to her." It seems to us that normal impulse under such conditions would have prompted an emphatic denial of liability if none existed.

In corroboration of her own testimony that defendant was due her for money loaned him, plaintiff produces two witnesses, whose evidence, though lacking in particulars, in view of all the circumstances of the case, should be given some effect in support of her contentions. One of these witnesses, while in the service of the drug company, in March or April, 1926, overheard a conversation between plaintiff and defendant wherein financial matters were discussed. He heard plaintiff ask defendant when he was going to pay her the money he owed her, and his reply was that "he could not raise it." The other witness, an employee of the drug company, at the time, overheard defendant and a man by the name of Causey, also an employee of the company, discussing the purchase of a drug business, and defendant stated that Mrs. Moore, plaintiff, would be taken in as a partner and given a share in the business "for what we owe her," and in addition she would be asked to advance $500 in cash to start the business, whereupon Causey asked, "Do you think you can get it?" to which Oliphant replied, "Well, I have gotten it before, all that I asked for." This occurred in the spring of 1926. This witness informed plaintiff of what she had heard, to which plaintiff replied: "Those birds are not going to get any more money than they had already gotten from her."

Defendant, as witness, denied positively that he ever borrowed any money from plaintiff, and, of course, denied promising to pay her any amount. He produced several witnesses who stated that plaintiff told them that defendant was due her money loaned him. The amounts ranged from $600 to $26,000, but no witness was produced to testify that plaintiff ever stated that defendant was not due her any amount.

The judge a quo in his reasons for judgment had this to say:

"This is one of those suits in which you feel that you have not got the truth, perhaps, on either side. Helen K. Moore began to work for the Saenger Drug Company in 1920. She left there in March, 1927, and went to California. In the spring of 1928 she sues Harry K. Oliphint, who was during all that time the General Manager of the Saenger Drug Company, for $1966.00, money which she claimed that she loaned Mr. Oliphint at various times from January, 1920, to September, 1925, while she was working for the Saenger Drug Company.

"When the case was closed, and long prior to argument, I could not help having a rather firm conviction that Mr. Oliphint did owe Mrs. Moore some money that he borrowed from her, and that on the contrary Mrs. Moore was trying to hold him up for a much larger sum than he actually owed. I have gone over this record time after time since then, and while this is more a feeling or surmise than anything else, this is still the way I feel about it."

We fully agree with the lower court's conclusion that the record does disclose with reasonable certainty that defendant is due plaintiff some money on account of loans made to him. Practically all the circumstances of the case and the rational inferences arising from the evidence strongly lead to such a conclusion, and are persuasive to the mind.

However, we also agree with the trial judge that the evidence in the case is not sufficiently positive or corroborated to establish defendant's liability beyond the amounts for which judgment was awarded plaintiff, and these are barred by prescription.

Two witnesses testify to having heard defendant admit owing money to plaintiff, but neither say he admitted owing her any

specific amount. He could have referred to the loans for which judgment was given plaintiff.

The rule that the finding of the trial judge should not be disturbed unless manifestly erroneous finds peculiar application in this case. He doubtless knew both parties to the suit, and possibly knew the witnesses who testified at the trial. He had ample opportunity to observe their demeanor throughout the trial and to have received impressions which are not brought up in the record on appeal.

For the reasons herein assigned, the plea of prescription filed by defendant is sustained; the judgment appealed from is hereby annulled, reversed and set aside; and plaintiff's suit is dismissed at her cost.