**156 So. 405**

**WATERMAN v. DUPEIRE et al.**

**No. 32574.**

July 2, 1934.

Rehearing Denied Aug. 3, 1934.

Guion & Upton, of New Orleans, for appellant.

Charles T. Wortham, of Donaldsonville, for appellees.

·ODOM, Justice.

Leon A. Dupeire, Sr., purchased certain real estate from Mrs. Laloina Maurin on October 21, 1920, and as representing part of the consideration gave four notes each for $1,000 secured by vendor's lien and special mortgage on the property.

Leon A. Dupeire died on September 22, 1922, and the property on which the mortgage rests, being community, went into the hands of his widow, Mrs. Amelia Poche Dupeire, and the eight children of the marriage. Mrs. Dupeire died September 24, 1930, and her interest in the property was inherited by her eight children.

John S. Waterman, the owner of the notes, attempted to foreclose the mortgage by executory process on August 12, 1931, making the eight children defendants. Seven of them enjoined the proceeding on the ground that the notes were prescribed. Their contention was upheld by the trial judge, and plaintiff appealed.

The notes are prescribed on their face. But plaintiff contends that prescription was interrupted and attempted to prove it. Whether or not he succeeded is the only question involved. The case was first tried by Judge Butler, who upheld the plea of prescription as to all the seven defendants who are plaintiffs in rule, except one, Ernest Dupeire. Judge Butler held that he had acknowledged the debt in writing, and therefore, as to him, the debt was not prescribed. A new trial was granted, and the case was finally tried and decided by Judge Himel, who found and held that the debt was prescribed as to all the seven defendants who are plaintiffs in the rule.

The notes are dated October 21, 1920, and fell due in one, two, three, and four years from their date. On October 21, 1921, the maker of the notes paid the interest due on all of them, and the notes were extended for one year. The payment of the interest and the extension of the notes is shown by indorsement on the back of the notes, signed and acknowledged by the maker. The maturity of the notes having been extended one year, they fell due in two, three, four, and five years, from October 21, 1920, so that the last one prescribed on its face on October 21, 1930 (Civ. Code, art. 3540), and the foreclosure proceeding was not brought until August 12, 1931.

■ Indorsements on the back of the notes show that interest was paid on all of them for the years 1922, 1923, 1924, 1925, and 1926. But the indorsements do not show when or by whom the payments were made, and it is not contended that these payments interrupted prescription, nor is it contended that any of the seven defendants (except Ernest Dupeire) personally made any acknowledgment of the debt which would interrupt prescription. As to Ernest Dupeire, one of the children, there is in the record a letter written by him to Mr. Waterman's attorneys dated July 13, 1931, in which he states, "Guy (referring to one of his brothers) and I would like to have you seize the place right away and get everything straightened out soon as possible, as we have been purchasing and working right along, lately we bought five cows and a mowing machine and about seventy-five

dollars ($75.00) worth of dairy utensils and we expect to buy a feed mill soon. Would you advise us to keep on buying and planting as we have been doing or wait until the place is settled? Hoping to hear from you about this, I beg to remain."

At the time this letter was written, all the notes had prescribed, unless prescription had been interrupted as contended by counsel for plaintiff; and even if the letter be construed as an acknowledgment of the debt, such acknowledgment was not sufficient to renounce prescription already acquired. "There must be a new promise made to pay the debt in order to nullify an accrued prescription."

Burdin v. Burdin, 171 La. 7, and authorities cited at page 20, 129 So. 651, 655.

■ Plaintiff attempted, however, to introduce parol testimony to show that the mother of defendants, who died on September 24, 1930, and her son Leon (who did not plead prescription) had delivered in pledge certain chattel mortgage notes as additional security for the payment of the vendor's notes and mortgage sought to be foreclosed; the purpose of the testimony being to show an interruption of prescription. Mrs. Dupeire having died, the objection was made that parol testimony was inadmissible to prove any acknowledgment of or promise to pay said debt made by her under article 2278 of the Civil Code, which provides: "Parol evidence shall not be received: * * * 2. To prove any acknowledgment or promise of a party deceased to pay any debt or liability, in order to take such debt or liability out of prescrip-

tion, or to revive the same after prescription has run or been completed."

The trial judge admitted the testimony subject to the objection, but in deciding the case held that the objection was good, and refused to consider it. His ruling was correct.

■ The testimony of Mr. Guion, attorney for plaintiff, shows that on or about November 7, 1925, Mrs. Dupeire, widow of the maker of the notes, and Leon A. Dupeire, her son, executed twenty-one promissory notes, three for $100 each, and eighteen for $150 each, payable from month to month, and to secure the payment of the notes executed a chattel mortgage on certain cattle which they owned individually, and that these notes were delivered in pledge as additional security for the vendor's lien notes.

It shows further that these chattel mortgage notes were held in pledge by the plaintiff for a considerable length of time. Plaintiff invokes the well-recognized and established rule that "prescription does not run in favor of the debtor during the existence of the pledge." Meyer Bros. v. Colvin, 122 La. 153, 47 So. 447, 448. But there is nothing except parol testimony to show the existence of the pledge, and Mrs. Dupeire was dead at the time the case was tried.

The reason underlying the rule that prescription does not run in favor of the debtor during the existence of the pledge is that the pledge is a "standing acknowledgment, on the part of the defendant, of his indebtedness." Montgomery et al. v. Levistones, 8 Rob. 145; Wilson v. Bannen, 1 Rob. 556.

In Scovel v. Gill, 30 La. Ann. 1207, it was held that the "possession by the creditor of property of his debtor, with the latter's consent, for the purpose of paying himself out of its hire, is an acknowledgment of the debt which interrupts prescription." Police Jury v. Duralde, 22 La. Ann. 107. See 25 Cyc. 1343, (111). Denis on Contract of Pledge, § 173, says that the thing pledged, remaining in the hands of the creditor, "is a continuous acknowledgment of the debt by the pledgor, which stops the course of prescription."

Article 3520 of the Civil Code provides that: "Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribed."

The consent of the debtor that the thing pledged remain in the hands of his creditor as collateral, being an acknowledgment of the debt, the question which arises is whether the consent of the debtor for his creditor to hold the pledge can be proved by parol testimony, after the death of the debtor. The answer is found in article 2278 of the Civil Code, which provides that parol evidence shall not be received "to prove any acknowledgment or promise of a party deceased to pay any debt or liability."

The burden was upon plaintiff to show interruption of prescription, and as to Mrs. Dupeire, the deceased, interruption could be shown only by written acknowledgment or promise to pay. Plaintiff offered no such testimony.

He did, however, offer a letter dated November 7, 1925, written by Guion & Upton, attorneys for plaintiff, to Mrs. Dupeire, and her son Leon, acknowledging receipt of the chattel mortgage notes, and stating that these notes were to be held in pledge to secure the payment of debt due plaintiff. But this was the writing of Guion & Upton, attorneys for plaintiff, and not of Mrs. Dupeire, who made no answer to the letter and was not bound by it.

Article 3158 of the Civil Code, as finally amended by Act No. 157 of 1900, "expressly does away with all formalities in the pledging of negotiable notes except the delivery thereof to the pledgee," Fidelity & Deposit Co. v. Johnston, 117 La. 880, 42 So. 357, 364; and counsel argue that since the act of pledge is complete by mere delivery of thing pledged and that "such pledge so made shall, without further formalities, be valid as well against third persons as against the pledgor thereof," Civ. Code, art. 3158, proof of the pledge may be made by parol even though the pledgor be a party deceased. They say in brief, page 9, "To say that although a pledge of collaterals, complete upon delivery, may be proved by parol, can not be so proved after the death of the pledgor, would present an anomalous situation."

Conceding (without holding) that the act or contract of pledge may be proved by parol even though the pledgor be deceased, proof of the act or contract of pledge would not support counsel's argument that prescription was interrupted in this case, because "It is not the contract or act of pledge that interrupts prescription, but it is the detention of the thing pledged by the creditor, or some one, by consent, for his account." Conger v.

City of New Orleans, 32 La. Ann. 1250, citing Troplong, pars. 65, 75, 254; Meyer Bros. v. Colvin, supra.

■ On March 31, 1923, Mrs. Dupeire, the widow of the maker of the notes, sold to her son Leon A. Dupeire, Jr., her undivided one-half interest in the land mortgaged for $3,000 cash, and the purchaser, in addition to the cash paid, assumed "the obligation to pay four certain promissory notes dated Oct. 21, 1920"; these being the vendor's lien notes held by plaintiff. Counsel argue that by this transaction, Leon A. Dupeire, Jr., became a debtor in solido with his mother and the succession of his father for the payment of these notes, and they cite article 3552 of the Civil Code and the case of Petetin v. Boagni, Adm'r, 26 La. Ann. 607, in support of the proposition that an acknowledgment of a debt by one of the debtors in solido interrupts prescription with regard to all the others.

But this does not improve plaintiff's situation, for the reason that on December 22, 1923, about nine months after he had assumed the payment of the notes, Leon A. Dupeire, Jr., sold the same property back to his mother, who as part of the consideration assumed the payment of the same notes. This latter transaction restored the parties to their respective original positions and was equivalent to the annulment or revocation of the original assumption, so that when the chattel mortgage notes were pledged in 1925, Leon A. Dupeire was not plaintiff's debtor.

■ Furthermore, if it be conceded that the assumption of the notes was a stipulation pour autrui, plaintiff's position would not be improved because he did not accept it before

it was revoked. "He who has stipulated in favor of another may revoke the stipulation any time before acceptance." Gravier v. Gravier's Heirs, 3 Mart. (N. S.) 206; Civ. Code, arts. 1890 and 1902; Mitchell v. Cooley, 5 Rob. 240; Citizens' Bank of Louisiana v. Miller et al., 44 La. Ann. 199, 206, 10 So. 779.

For the reasons assigned, the judgment appealed from is affirmed.