### JELSCH v. LAURICH.
### No. 5793.

Court of Appeal of Louisiana.
Second Circuit.

March 8, 1939.

820

George Thurber, of Shreveport, for appellant.

Hoye Grafton, of Shreveport, for appellee.

HAMITER, Judge.

Plaintiff alleges in his original petition that he made three loans to defendant, one of which was on December 1, 1925, for $150 to be repaid in ten months at $15 per month, another under date of April 8, 1931 for $800 to be paid back at the rate of not less than $30 per month, and the remaining one on November 6, 1931, for $15; and that all of said sums, less two certain payments made on the $800 loan, are past due and unpaid. Judgment for the total unpaid balance is asked.

The suit was filed on June 25, 1937.

The petition was met with a special plea in which defendant charged that the rights, actions and demands of plaintiff are barred and prescribed by the lapse of three years.

Thereafter, plaintiff amended his petition alleging that defendant "acknowledged all of the above indebtedness many times and has never denied the same."

The plea of prescription was referred to the merits by agreement of counsel.

In his answer defendant denies that he borrowed the mentioned funds from plaintiff, and avers that "if any of the loans as therein alleged are proven upon the trial of this cause, then and in any event such loans are prescribed by the lapse of three years from the time the same were made, which said prescription is hereby especially pleaded."

The case was regularly tried. There was judgment sustaining defendant's plea of prescription of three years and rejecting the demands of plaintiff at his cost. The latter appealed.

The trial judge in his written opinion correctly and appropriately said: "It may be well to state in the beginning that every party who has appeared in this case, either as litigant or witness, is related to every other party either by blood or marriage." To this we will add that plaintiff, an invalid whose incapacity resulted from World War service, is the uncle of defendant.

No difficulty is experienced by us in finding that defendant borrowed from plaintiff, as the latter alleges, $150 on December 1, 1925, $800 on April 8, 1931, and $15 on November 6, 1931. The nephew, in the trial court, admitted that those funds were delivered to him, but he contended there that they were donated to him because of favors that he extended his uncle. This contention is not borne out by a preponderance of the evidence. In fact, it is partially refuted by his own testimony. The $800 was used in the purchase of a house for him. He testifies regarding the transac-

tion that, "In 1931, I bought a place in Longview, Texas, and Mr. Jelsch come over and paid for the place, and I told him at the time to make deed to him, he says no, make the deed to you, he says, I will do anything in the world I can for you." If the nephew considered such sum as being a gift to him, why did he suggest that the title to the property be placed in his uncle's name? Obviously, the purpose of his suggestion was to provide security for the repayment of the funds. Furthermore, the fact that the nephew repaid $200 of the $800 item, this being established by the evidence, indicates that a loan was intended.

In this court defendant does not dispute plaintiff's sworn statements that the money was advanced as loans. On the contrary, it is stated in his counsel's brief that, "The amount the plaintiff seeks to recover of this defendant is for loans made to the defendant during the years of 1925 and 1931." To avoid repayment of the borrowed funds, the nephew now relies solely on the legal defense of three years' prescription liberandi causa. This we shall presently consider.

■ It is stated in Civil Code, art. 3459 that, "The prescription by which debts are released, is a peremptory and perpetual bar to every species of action, real or personal, when the creditor has been silent for a certain time without urging his claim." According to the provisions of Civil Code, art. 3538, actions for the payment of money lent are prescribed by three years. This prescriptive period appears to be applicable to plaintiff's demands because the money advances were not evidenced by any writings whatsoever. Furthermore, as no specific maturities of the loans are satisfactorily disclosed by the evidence in the record, it must be held that prescription began to run from the dates of the respective advances. Moore v. Oliphant, 18 La. App. 278, 137 So. 593; Lagarde v. Dabon, 155 La. 25, 98 So. 744; Succession of Llula, 44 La.Ann. 61, 10 So. 406.

■ As before shown, the first loan obtained by defendant was in the year 1925, while the remaining two were in 1931. This suit was commenced in 1937, or more than three years after the last one. Prescription has therefore accrued on the entire indebtedness, unless it has been suspended or interrupted through some legally approved and effective acknowledgment. An acknowledgment of that character is one that is clear, specific and unequivocal. Heard v. Heard, La.App., 149 So. 156; Stovall v. Tolar, La.App., 172 So. 539.

■ Under the jurisprudence of this state the burden of proving an interruption of prescription on an apparently prescribed obligation rests with the person urging it. Waterman v. Dupeire, 180 La. 320, 156 So. 405; Stovall v. Tolar, supra; Commercial Nat'l Bank in Shreveport v. Henderson, La.App., 173 So. 790. The plaintiff is the affected party in the instant controversy, and we shall now determine if he has discharged the burden imposed on him.

■■ Recovery on the $150 loan, which was made in 1925, is clearly barred. The record discloses no conversations or dealings between the parties with reference to that debt within a period of six years after the time of its contracting. Subsequent to the year 1931, defendant acknowledged that he had obtained the funds, but this was not sufficient to reinstate the already barred claim.

"There must be a new promise made to pay the debt in order to nullify an accrued prescription." Waterman v. Dupeire, supra [180 La. 320, 156 So. 406].

■ The $800 item is next considered. Two payments of $100 each were made thereon by defendant, the first being about September, 1931, while the other was in the summer of 1932. Defendant sought to show that one of those represented a loan that he secured for his uncle and was therefore not a reimbursement to that extent of the claimed indebtedness; however, the evidence when considered as a whole is convincing that it and also the other payment were intended as credits on the obligation. These credits, together with the accompanying acknowledgments of the debt, served to suspend the running of the three-year prescriptive period and caused it to begin anew on the respective dates thereof. The record does not definitely disclose an acknowledgment of any kind by defendant during the years of 1933, 1934 and 1935. In 1936, plaintiff visited his nephew in Longview and the latter at that time admitted that the loan was due and still unpaid. However, on the occurrence of this, the indebtedness was legally uncollectible in view of the elapse of the preceding three consecutive years during which there was no acknowledgment and prescription accrued; and a revival of the debt was

not effected by the aforementioned admission. Waterman v. Dupeire, supra.

 No proof was offered to show any recognition of liability by defendant regarding and following the loan of $15 made in November, 1931. Consequently, it must be considered as having likewise prescribed.

In the conclusion of his written opinion the district judge said: "We dislike very much to sustain a plea of prescription in a case where Mr. Jelsch has undoubtedly been the financial angel of the family, and especially the defendant, but we can see nothing else to do even when a nephew pleads prescription against his uncle." The expressed attitude is likewise ours. If it were possible, we would permit our decree herein to be dictated solely by principles of equity. However, as said in Lancaster v. Dunn, 153 La. 15, 95 So. 385, 387, "The equity powers of the courts of this state are, by article 21 of the Civil Code, expressly limited to cases in which there is no express law"; and, consequently, we must be guided by the above enunciated doctrines of law and approve the holding of the district court.

Accordingly, the judgment is affirmed.