No. 3869

Second Circuit

AGURS v. PUTTER

(November 18, 1931. Opinion and Decree.)
(April 5, 1932. Opinion and Decree on Rehearing.)

Arthur A. LeRosen, of Shreveport, attorney for plaintiff, appellee.

John B. Files, of Shreveport, attorney for defendant, appellant.

McGREGOR, J.   On or prior to November 9, 1897, Allec Putter, the defendant herein, borrowed from the plaintiff, W. C. Agurs, the sum of $30.  To secure the payment of this sum Allec Putter executed an act of sale wherein he conveyed to the plaintiff, W. C. Agurs, lot 42 of ten-acre lot 14 of the city of Shreveport, and the consideration was stated to be $30 cash in hand paid, the receipt of which was acknowledged.  Written in the deed was the following special clause:

"It is agreed that the said Putter shall have the right to redeem said property at any time within three months from date by paying to said Agurs in cash the sum of $30.00."

Putter remained in possession of the property and it is admitted that the object of the so-called act of sale was to secure the payment of the money loaned.  The sum loaned was not sufficient to have been considered a serious consideration for the property.

Fifteen years later, on January 6, 1912, while Putter was still in possession of the property and without his knowledge or consent, Agurs conveyed it to the Douglas Island Land & Improvement Company, Ltd., a corporation of which he was the principal stockholder, manager and president.  The purported consideration was $300 cash, but as a matter of fact nothing was paid by the company.

Then ten years still later, on May 6, 1922, W. C. Agurs, acting in his capacity as president of the Douglas Island Land & Improvement Company, Ltd., reconveyed the property to Allec Putter.  In the act of sale, which was in the form of a credit deed retaining a vendor's lien and special

mortgage, the purported consideration was stated to be $500, with $50 of this paid in cash at the time. A note of even date with the sale was written up for $450, due one year after date, on May 6, 1923, with Allec Putter's name signed on it both as maker and endorser in blank. The act of sale and mortgage also purports to have been signed by Allec Putter as vendee and mortgagor. In every case Putter's name was written by W. C. Agurs and purports to have been signed by "his mark." On the back of this note two alleged credits are made in the handwriting of W. C. Agurs, namely: July 18, 1923, $50; September 22, 1925, $41. On May 5, 1928, this suit was filed, and on May 8, 1928, it was personally served on Putter. It is a suit to foreclose a mortgage via ordinaria, based on the above named $450 note. In his original petition the plaintiff, W. C. Agurs, alleges that he is owner of the note sued on "for valuable consideration before maturity." (Bold type ours.) In an amendment to his original petition he alleges that:

"Plaintiff shows that the payments credited on the said note herein sued on, were made to plaintiff by said Allec Putter, defendant herein; plaintiff shows that at said time, plaintiff was acting as agent for Mrs. M. D. Agurs, since deceased, then holder and owner of the said notes for value in due course." (Bold type ours.)

The prayer of plaintiff is for judgment on the balance alleged to be due on the note said to be $439.40, with 8 per cent interest from July 26, 1924, and 10 per cent attorney's fees and for recognition of the vendor's lien and privilege and special mortgage on the property described above.

Before answering plaintiff's original and amended petition the defendant filed a plea of five years' prescription, which was referred to and tried with the merits of the case. In his answer he denied the validity and genuineness of the note and on trial denied all knowledge of it. He alleged the origin of his title to the property in question and explained how the record title was conveyed from him to the plaintiff on November 9, 1897, stating that on that date he was indebted to the plaintiff in the sum of $30, and that he executed an instrument which he thought was for the purpose of securing the payment of said amount; that he always remained in possession of the property; and later learned that the instrument was in the form of a sale with the right of redemption reserved. He alleged further that the purported transfer of the property by the plaintiff to the Douglas Island Land & Improvement Company, Ltd., was invalid for the reason that the plaintiff had no right or interest in the said property, and that the said company, of which the plaintiff was the president, owner and manager, acquired no rights in the said property, and that the alleged transfer was simply a transaction by the plaintiff with himself and that no consideration was passed or title conveyed and that, therefore, the entire transaction was fraudulent. With reference to the transfer to him by the Douglas Island Land & Improvement Company, Ltd., in connection with which the note sued on was identified, he alleges that he cannot read or write, and that he did not intend to execute a vendor's lien or mortgage on his property; that he was never indebted to the plaintiff in any sum except the original $30, to secure which he gave a deed to his property, which amount had long since been paid.

On trial in the lower court the defendant's plea of prescription was overruled, and judgment was rendered in favor of the plaintiff as prayed for. From that judgment the defendant has appealed, suspensively.

## ON THE PLEA OF FIVE YEARS' PRESCRIPTION

The due date of the note sued on is May 6, 1923. This suit was filed and citation issued on May 5, 1928, and the defendant was personally served on May 8, 1928. Counsel for plaintiff, in opposing the allowance of this plea of prescription, contends that since the suit was filed on May 5, 1928, five years' prescription had not accrued from the alleged maturity of the note, May 6, 1923; that it is the date and act of filing the suit that interrupts prescription and not the date and act of service of the citation by the sheriff on the defendant. In his brief he says.

"While the general understanding is that citations must be served before an interruption of prescription occurs, as far as we have been able to find there is no positive holding to that effect by the appellate courts."

The answer to that statement is found in article 3518 of the Revised Civil Code, which reads as follows:

"A legal interruption takes place, when the possessor has been cited to appear before a court of justice, on account either of the ownership or of the possession; and the prescription is interrupted by such demand, whether the suit has been brought before a court of competent jurisdiction or not." Art. 3518 (3484) Revised Civil Code.

Under the plain letter of this provision of the law and of the decisions of our courts interpreting it the irresistible conclusion is that the simple filing of a suit and the issuance of a citation and its delivery to the proper officer will not constitute a "legal interruption" of prescription. This does not take place until the citation has been "served." Counsel is confused by a line of decisions to the effect that even though this citation is defective in some ways, it still may be sufficient to interrupt prescription. But there must always be a service, and if the service is after the expiration of the prescriptive period it is ineffective even though the suit may have been filed and the citation issued and delivered to the proper officer before its expiration. So that, in this case unless prescription was interrupted in some other way than by the filing of the suit, the plea will have to be sustained.

But plaintiff alleges that prescription was interrupted by two payments shown to have been made in the sums of $50 and $41 on July 18, 1923, and September 22, 1925, respectively. On the trial of the case defendant denies all knowledge of the note or its existence. He positively denies having made the payment of $50 at the time that the alleged note is said to have been given. He positively denies having made either of the payments referred to. The plaintiff, of course, is just as positive that the payments were made. Unless there is some corroboration of plaintiff's testimony it must be held that he has not established his position with that degree of legal certainty that is required by law. To corroborate his statement with reference to these two payments, two former bookkeepers of the plaintiff were produced as witnesses. The most that they could say was that they remembered that at some time during the period of their employment by the plaintiff the defendant came to the plaintiff's office and had some kind of financial transactions with him. This testimony is too vague and indefinite. Besides, plaintiff's own testimony is rather in conflict with the pleadings, and one of the notations on the back of the note. In plaintiff's petition he alleges that at the time of the two payments shown on the note, it was the property of Mrs. M. D. Agurs, whereas in his direct examination by his own counsel he states that the note was his property at the time

the alleged payments were made. He also stated that the second payment was made him personally, but on the back of the note, in the plaintiff's handwriting, it is stated that the second payment was made to Mrs. M. D. Agurs. In view of this state of the testimony we cannot hold that the plaintiff has established the two payments alleged to have been made by the defendant on the note, and therefore, the plea of prescription filed by the defendant is sustained.

In view of the fact that we have sustained the plea of prescription filed by the defendant, it becomes unnecessary to consider the case further on its merits.

For the reasons assigned the judgment appealed from is hereby annulled, reversed and set aside, and the demand of the plaintiff dismissed at his cost.

---

### ON REHEARING

PALMER, J. Alleging himself the holder and owner of the notes sued on, plaintiff brings this action for the recovery of a balance of $439.40, claimed to be due thereon. In connection with the suit, he asks for recognition and enforcement of a mortgage and vendor's lien against certain property given and retained to secure the payment of said note.

In substance, he alleged that on May 6, 1922, defendant purchased the property in question from the Douglas Island Land & Improvement Company for a consideration of $500, paying $50 cash and executing his promissory note for $450, due one year after date, payable to himself and by him endorsed in blank, covering the balance of the purchase price, the vendor retaining a special mortgage and vendor's lien on the property conveyed to secure the

payment of the said note; and that defendant, as shown by the credits on the reverse of the said note, made payments thereon as follows: On July 18, 1923, paid $6.40 on the principal and $43.60 on the interest; and on September 22, 1925, paid $5 on the principal and $36 as interest.

Plaintiff amended his petition, alleging that while the payments were made to him, he was acting for Mrs. M. D. Agurs, who was then the holder and owner of the note.

Defendant filed an exception of no cause or right of action, which was overruled. He then filed a plea of prescription of five years, which was, by consent of counsel, referred to the merits.

The defendant, in effect, entered a general denial and in addition, alleged that he is the owner of the property in controversy, but under a chain of title not including the alleged transfer from the Douglas Island Land & Improvement Company. He avers that on November 9, 1897, he borrowed $30 from plaintiff on this property and secured the loan by an instrument which he later found out was a redemption deed, although he continued in possession of the property and that the loan was repaid on or before the year 1908.

He further alleges that plaintiff, without any interest in or title to said property, on July 6, 1912, attempted to transfer it to the Douglas Island Land & Improvement Company, a corporation of which plaintiff was president and sole manager, invested with full authority to represent the corporation, but that the transfer was without consideration and passed no title and constituted a fraud upon defendant.

He further alleged that on May 6, 1922, plaintiff, acting under the name of the said corporation, represented to defendant that

he desired to reconvey the property to him, and accordingly recorded the deed from the corporation to defendant, with which the note sued on is identified; that he could not read or write and did not intend to execute a vendor's lien and mortgage on said property or to acquire title thereto from said corporation; that all the indebtedness he ever owed plaintiff was the said $30 borrowed in 1897; that he was never indebted to said corporation, but if the instruments in which plaintiff and the said corporation figure are held to be genuine, then they were brought about by the misrepresentations of plaintiff to defendant and therefore have no validity as transfers of property.

Defendant pleads in the alternative that, if it be held plaintiff is the holder of a mortgage upon the said property, he is the head of a family, occupying said premises with his family as a homestead and has so occupied it since he acquired it in 1892, and that the property is worth less than $2,000.

On these issues the case went to trial in the lower court, resulting in a judgment for plaintiff, as prayed for. From that judgment, defendant has appealed.

After the judgment of the district court was signed, the defendant died. The administrator of his succession was substituted as defendant.

## PLEA OF PRESCRIPTION

The defendant has pleaded the prescription of five years as a bar to plaintiff's demands. That plea is based upon the following facts revealed by the record: The note is dated May 6, 1922, and matured one year after date, or on May 6, 1923. The service in this case was made on May 8, 1928. It is apparent, therefore, that more than five years elapsed between the due date of the note and the service in this suit, so prescription has run, unless there were some intervening causes that prevented it.

Plaintiff resists the plea on the following grounds:

First, that the due date of the note (May 6, 1923) fell on Sunday, which extended the date of payment to the following day (May 7, 1923), and that prescription did not begin to run until the cause of action accrued, which was May 8th, contending that the five years did not expire until May 8, 1928, the date on which the citation was served; and second, that prescription was interrupted by two payments made on the note by defendant, one on July 18, 1923, and another on September 22, 1925.

There was no testimony introduced to show that May 6, 1923, was Sunday. Counsel meets that situation with the argument that the court must take judicial notice of the fact that a particular date is a dies non.

It is a fact that when a promissory note falls due upon Sunday, or a holiday, the next succeeding business day is the date of maturity (Act No. 64, section 85, of the Legislature of Louisiana for the year 1904). It is clear, therefore, that a cause of action on a promissory note does not accrue, when the note falls due on Sunday, or a holiday, until after the "next succeeding business day," and hence prescription does not begin to run until after the expiration of the extended maturity date. Kimball & Singer v. Fuller & Miller, 13 La. Ann. 602; Wardwell v. Sterne, 22 La. Ann. 28; Breaux v. Broussard, 116 La. 215, 40 So. 639. So in this case, if May 6, 1923, the stipulated due date, fell on Sunday, the note did not become payable until the following day (May 7th), and did not then, unless that day was

a "business day." If May 7th became the due date, then the cause of action did not accrue until after the due date expired, or until May 8th.

It is a rule of law that the court will take official notice of the fact that a particular day is a dies non. Huie v. Breazeale, 19 La. Ann. 457; Whaley v. Houston, 12 La. Ann. 585. But this rule will not be extended so as to cover an unreasonable time. It is easy for the court to consult the calendar when a date is involved touching upon what may be classed as current matters to determine the day of a given date, but in this case, it has been almost nine years since the note sued on became due. It would entail an unreasonable hardship upon the court to have to determine if May 6, 1923, fell on Sunday. This rule will not be extended to cover such a long period of time. In cases involving a holiday reaching back over a period of years, a party to a suit whose rights are affected thereby, should introduce evidence to establish the fact. The court in such cases will not ex proprio motu take notice of its existence.

In this case, however, even if the facts are as claimed by plaintiff, it would avail him nothing. He says May 6, 1923, was Sunday, thus extending the due date of the note to Monday, May 7th, and that the cause of action did not accrue until May 8th. Even so, the prescriptible period began with May 8, 1923, and ended with May 7, 1928. The service was not made until May 8, 1928, so five years had fully expired at that time.

It is clear, therefore, that the note is prescribed unless the payments as credited on the note were actually made by defendant, because even payments of interest interrupt prescription. Marcelin v. Creditors, 21 La. Ann. 423; Canal Bank, etc., v. Ascension Bank, 140 La. 465, 73 So. 269.

As will be readily observed, a decision of that point turns entirely upon a question of facts. The burden of that undertaking rests upon plaintiff.

As a review of the evidence will show, plaintiff testified that the payments were truly made as shown by the credits on the back of the note. He is corroborated by C. F. Rushing, who worked for plaintiff for three or four years, beginning in 1921. He said during that time he saw defendant in the office of plaintiff make payments to plaintiff. Robert McElroy, who also worked for plaintiff from 1924 to 1926, saw defendant during that time come to the office of plaintiff on several occasions, to transact some kind of business.

The defendant not only denied the payments credited on the note, but also denied the execution of the note itself, notwithstanding the note was paraphed by the notary to identify it with the mortgage. In considering this plea, the lower court evidently gave due consideration to the facts on which the interruption hinges, and overruled the plea. We find no error in that ruling.

### THE MERITS

The record shows that on November 9, 1897, Allec Putter conveyed to W. C. Agurs lot 42 of ten-acre lot 14, with improvements, situated in the city of Shreveport, for a consideration of $30. The deed contains this stipulation: "It is agreed that said Putter shall have the right to redeem said property at any time within three months from date by paying to the said Agurs in cash the sum of $30. Agurs never reconveyed the property to Putter nor did he ever issue any writing evidencing the fact

that Putter, within the time specified or within any other period of time, repaid the $30. Agurs, however, did not take possession of the property, so, as between plaintiff and defendant, the contract was deprived of the essential characteristic of a redeemable sale. Collins v. Pellerin, 5 La. Ann. 99. However, there was no dispute over this question, because Agurs for about fifteen years after the time limit for redeeming the property expired, continued to treat the instrument as one of security only.

On January 6, 1912, Agurs, for a stated consideration of $300 cash, conveyed by warranty deed this property to Douglas Island Land & Improvement Company, Ltd. The title thus stood in the name of said corporation until May 6, 1922, on which date it executed unto the defendant a warranty deed conveying this property for a stated consideration of $500, of which $50 is stated to have been paid in cash, and the balance of $450 is said to be represented by the promissory note of defendant, due cne year after date and which is the note sued on in this case.

Some of the facts incidental to, connected with or growing out of the record transactions referred to above, are in serious dispute between plaintiff and defendant. For instance, the defendant claims the only money he ever borrowed or received from plaintiff was the $30 he borrowed on November 9, 1897. He also claims that during the intervening years he paid all taxes assessed against said property. On the other hand, plaintiff claims to have advanced cash to defendant during the years 1901 to 1912, inclusive, amounting to about $237, which included the amount of taxes he says he paid for defendant on this property during that period, and that during

the same time defendant made payments to him on these advances, aggregating $68.

On the question of the genuineness of the deed from the Douglas Island Land & Improvement Company to defendant, conveying this property, and the note alleged to have been executed by defendant, covering the larger portion of the purchase price, defendant denies the transfer and denies the execution of the note. On the other hand, in addition to the fact that the deed containing the special mortgage and vendor's lien, including the note identified therewith, is a notarial act, plaintiff testified that defendant sought to repurchase the property, and that for the consideration and upon the terms stated in the act of conveyance, the said corporation transferred the property to him.

On the question of the genuineness of the payments credited on the note, defendant denied that he made such payments. On the other hand, plaintiff testified that the payments were made by defendant at the time and in the amounts as shown on the reverse of the note, and he was corroborated in his testimony to some extent by two employees who formerly worked for him. One of them, C. F. Rushing, testified that he was employed by plaintiff in 1921, and worked for him for three or four years and that during that time, he saw defendant in the office and saw him make payments to plaintiff. The other employee, McElroy, testified that he worked for plaintiff from 1924 to 1926, and that during that time he saw the defendant on several occasions in the office of plaintiff.

It might be reasoned with some force that the deed from defendant to plaintiff on November 9, 1897, containing the redemption clause, was only an act of security and that the amount required for the

redemption was timely paid, or if not paid, that the act as a mortgage, not having been reinscribed, prescribed long before plaintiff asserted any ownership of the property. But such reasoning would avail defendant nothing if indeed he purchased the property from the Douglas Island Land & Improvement Company on May 6, 1922, on the terms and for the consideration as written in that act of conveyance. If he dealt with the said corporation as owner of the property and sought and received a title from it, and executed his note as evidence of the credit portion of the purchase price, he is estopped to dispute his author's title or the genuineness of the title he thus sought and accepted, as well as the note he gave to represent the balance due on the purchase price. A plea of estoppel, based upon this ground, was filed by plaintiff after the answer was filed.

The deed from the Douglas Island Land & Improvement Company to defendant is a notarial act, regular in form, passed before J. E. Croom, deputy clerk of court and ex-officio notary public, in the presence of two attesting witnesses, and apparently signed by the vendor and the vendee. The law as to the force and effect of authentic acts is contained in Civil Code, article 2236, as follows:

"The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery."

Therefore, the presumption is that this deed is genuine and it must be so accepted, "unless it be declared and proved a forgery." Fontini v. Land Company, 167 La. 138, 118 So. 865.

Defendant does not allege that the deed is a forgery. His allegations are in substance that plaintiff, acting in the name of Douglas Island Land & Improvement Company, stated that he desired to place the property back in his name and accordingly recorded the deed in question, and that defendant did not pay the cash consideration recited in the deed; that he cannot read or write and that he did not intend to acquire the property from the said corporation nor to give a mortgage or vendor's lien thereon.

It will readily be seen that neither forgery nor fraud is alleged by the defendant in regard to this transaction. Under a liberal construction placed upon his pleadings, it may be held that the defendant has alleged that he signed the deed in question through error and, therefore, had the right to prove by parol evidence the error alleged. But when we come to consider his testimony, we find that he does not even attempt to prove any error. He made no claim in his testimony that plaintiff or the Douglas Island Land & Improvement Company deeded or was due to deed him this property, and that in discharging that obligation, they, through error, specified a cash payment, which he did not make, and a note for the balance of the consideration, which he did not execute. If he had given such testimony, he possibly would have been within his pleadings, but his evidence tends to prove forgery and not error. As already stated, he did not allege forgery, however, since no objection was made to his testimony on the ground of irrelevancy, the pleadings may be considered as amended so as to admit proof of forgery.

The question to be decided here is: The deed under consideration being an authentic act, and hence full proof of the agreement contained in it, has defendant destroyed its force and effect by the parol evidence he adduced, since he depends entirely upon such character of proof?

From a careful study of the defendant's testimony, we fail to find any dependable proof that the deed and note in question were forgeries, or even that they contained stipulations fraudulently or erroneously inserted. Counsel for plaintiff repeatedly tried to get him to say whether or not he came before a deputy clerk of court and signed the act of sale now under consideration, but he invariably refused to answer the question, telling counsel to ask his counsel whom he had employed to do his talking. He simply refused to make a statement on that point. It will be borne in mind that by agreement defendant's testimony was taken out of court, so plaintiff was without the aid of the court to force him to answer the questions. He did finally deny that he signed the note sued on.

Defendant's testimony is not of that high character necessary to overcome the legal presumption in favor of the verity of this authentic act and note. He offered no other proof to corroborate him. Not only is the authentic act presumed to be full proof of what it contains, but plaintiff testified that defendant sought to repurchase this property, and that the said act of conveyance and the said note are genuine in all particulars.

Defendant carried the burden of proving the grounds of his attack and failed to discharge it.

The judgment of the lower court is affirmed, defendant, appellant, to pay all costs of appeal.

The right to apply for a rehearing is reserved to defendant, inasmuch as the judgment of this court on a former hearing in which the plea of prescription was sustained did not pass upon the merits of the case.

No. 13,988

Orleans