ERNEST M. LOEB CO., Inc., v. AVOYELLES DRAINAGE DIST. NO. 8 OF PARISH OF AVOYELLES, LA., et al. (FEIBLEMAN, Intervener).

Civil Action No. 220.

District Court, W. D. Louisiana, Alexandria Division.

May 2, 1945.

A. M. Suthon, of New Orleans, La., for plaintiff.

W. E. Couvillon and S. Allen Bordelon, both of Marksville, La., for defendant.

Titche & Titche, of New Orleans, La., for intervenor.

Maxwell J. Bordelon, of Marksville, La., for opponent.

PORTERIE, District Judge.

On December 29, 1939, The Ernest M. Loeb Co., Inc., the plaintiff, filed a civil action against the Avoyelles Drainage District No. 8 of the Parish of Avoyelles, Louisiana, defendant, alleging that it is the owner of some sixteen (16) bonds issued by the defendant, each in the principal sum of $500, which were past due and unpaid at the time of the suit. Of these bonds declared upon by plaintiff, three matured June 1, 1929; three, June 1, 1930; two, June 1, 1931; three, June 1, 1936; one, June 1, 1937; and four, June 1, 1939. Plaintiff also sued upon seven other bonds of the same series, also of the principal amount of $500 each, which were not yet matured, but which it alleged would mature June 1, 1940.

The petition fully describes these bonds, and shows that the twenty-three bonds owned by the plaintiff company were all of the same issue of one hundred and fifty bonds, each in the principal sum of $500, dated June 1, 1919, all of like tenor and effect except as to maturity and serial number. Paragraph II of plaintiff's petition gives the form and wording of the bonds, which show that they were issued by the drainage district for the purpose of constructing canals and ditches and such other things pertaining to or necessary for the proper and efficient drainage of the land of the district, as authorized by law, and also for the government of said district. The language of the bonds further shows that they were issued in compliance with the constitution and laws of the state of Louisiana, and especially Article 281 of the Constitution of Louisiana (Constitution of 1913), Acts 256 and 317 of the General Assembly of the State of Louisiana of the year 1910, as subsequently amended, and certain ordinances of the Board of Commissioners of the Avoyelles Drainage District No. 8 of the Parish of Avoyelles, Louisiana, specifically referred to by date.

Plaintiff also alleges that it is the owner of thirty-seven past due interest coupons, each in the sum of $25 (this series of bonds bore interest at five per centum per annum from date payable annually on the 1st of June of each year during which the interest on the particular bond would run). The bond numbers and the due years of the interest coupons are, as follows: 107—1936; 108—1936; 116—1937; 130—1937-8-9; 131—1937-8-9; 132—1937-8-9; 133—1937-8-9; 143—1936-7-8-9; 145—1937-8-9; 146—1937-8-9; 147—1937-8-9; 148—1937-8-9; 149—1937-8-9; 150—1937-8-9.

On the trial of a motion to dismiss because of failure to state a claim for which relief can be granted, filed by the defendant, diversity of citizenship being conceded, the court overruled defendant's motion, for reasons set forth in the judgment signed on May 9, 1941.

Thereafter, on June 30, 1941, the defendant drainage district filed its answer. Previously, on January 13, 1941, upon order of the court of January 11, 1941, T. Jeff Feibleman intervened, alleging that he is the owner of seventeen bonds of the same issue, and seeks against the defendant drainage district similar relief to that prayed for by plaintiff.

The description of the seventeen bonds, given in Paragraph II of the petition of intervention filed by Feibleman, shows that four of them matured June 1, 1936; six of them matured June 1, 1937; four of them matured June 1, 1938; one of them matured June 1, 1939; and two of them matured June 1, 1940. The listings of coupons attached show that the attached coupons include only those due June 1, 1936 and on various subsequent dates.

A stipulation, filed on September 8, 1941, between the defendant drainage district and T. Jeff Feibleman, admits that the proper jurisdictional facts appear, that the intervenor is a proper party and is the holder and owner for value of the seventeen bonds; that these bonds are past due and unpaid and consequently in default; and further that the answer filed to plaintiff's petition shall be deemed, insofar as applicable, as filed with reference to the petition of intervention, and, expressly, the issue shall be regarded as having been joined on the petition of intervention.

After various attempts at amicable settlement of the issues, and after extensions of time granted by the court in view of such attempts, the then parties to the suit, namely, (1) The Ernest M. Loeb Co., Inc., plaintiff, (2) T. Jeff Feibleman, intervenor adopting the position of plaintiff, and (3) Avoyelles Drainage District No. 8 of the Parish of Avoyelles, State of Louisiana, defendant, filed on October 20, 1944, a joint motion of all parties for a partial distribution of funds. The following judgment was rendered and signed:

"This cause came on to be heard on the joint motion of The Ernest M. Loeb Company, Inc., T. J. Feibleman, and Avoyelles Drainage District No. 8, of the Parish of Avoyelles, being, respectively, Plaintiff, Intervener, and Defendant, and constituting all of the parties hereto, and good cause appearing:

"It is ordered, that Defendant, Avoyelles Drainage District No. 8, of the Parish of Avoyelles, pay on account of the principal of each of the seventy-two bonds of the issue sued on, the sum of Two hundred fifteen and 27/100 ($215.27) dollars, payment to be made upon the presentation of each of said bonds to the Union Bank at Marksville, Louisiana, for proper endorsement of payment thereon; that there be paid to W. E. Couvillon and S. Allen Bordelon, Esqs., jointly, Attorneys for Defendant, as attorneys' fees, the sum of Seven hundred fifty ($750.00) Dollars; further attorneys' fees, if any, to be fixed by the Court.

"It is further ordered, that the remaining sum of One thousand two hundred forty-eight and 82/100 ($1248.82) dollars be retained by the Defendant, Avoyelles Drainage District No. 8, of the Parish of Avoyelles, subject to the further orders of this Court, and that nothing be paid therefrom except upon order of this Court after due proceedings herein.

"It is further ordered, that these proceedings remain on the docket without prejudice to any claim asserted herein, or any defense made, save that proper credit be given for the payments made by Defendant.

"It is further ordered, that after the payments herein ordered be made, the parties hereto be given until February 15th to further plead or appear herein.

"It is further ordered that a written notice of the pendency of this motion and application be mailed by the defendant Avoyelles Drainage District No. 8 of the Parish of Avoyelles, to each bond holder at his last known address allowing 30 days to file any opposition thereto and if no such opposition be made that said defendant proceed to make the payments as herein ordered."

Within the thirty days allowed by this judgment, C. W. J. Neville filed a motion to dismiss this action and the proposed distribution of funds as contained in the order or judgment quoted above, "for the reason that most of the bonds in the series are prescribed by the limitation of five years." He further alleged that all of the bonds matured more than five years prior to the date of his motion, are prescribed, and that he, as owner of bonds No. 138 and No. 139, should be paid in preference and priority over all other claims, for the reason that he has protected his rights by obtaining a judgment against the defendant on May 3, 1940. Neville further cited the provisions of Article 3540 of the Revised Civil Code of Louisiana in support of his plea of prescription and motion to dismiss. His prayer asked that the order or judgment approving the joint distribution proposed by plaintiff, intervenor and defendant be annulled, voided and set aside and that mover's claim be paid by preference and priority over all other claims in this

300

proceeding and that plaintiff's suit be dismissed at its cost.

On date of argument on this motion, counsel for Neville filed, alternatively, a petition for a writ of mandamus, in which he seeks from the court an order upon the defendant, commanding it to pay to Neville and by preference and priority over all other claims, the amount of $500 each for his bonds Nos. 138 and 139, plus the sum of $50 on each bond to cover two interest coupons attached, or else to show cause to the contrary. Without signing the order directing that alternative writs of mandamus issue, the court heard argument as to whether or not mandamus would lie, and this question was submitted along with those involved in the consideration of the motion to dismiss on the ground of prescription.

I. The opponent, Neville, claims that Article 3540 of Civil Code of Louisiana, with provision of five years, controls the issue.

■ Opponent has mistaken his remedy, if indeed he has any remedy. Of the twenty-three bonds on which plaintiff declares, only eight matured before June 1, 1936. The present suit was filed on December 29, 1939. Although as to those eight bonds of earlier maturity, the last two of which matured June 1, 1931, the opponent's motion might have some merit on the face of it (and it has no actual merit in any respect, for reasons we shall give later), it is obvious that any prescription that might otherwise have accrued on the fifteen bonds maturing June 1, 1936, and various dates thereafter, was interrupted when this suit was filed on December 29, 1939, before prescription had fully run on any of them.

■ It has been decided that the prescription of five years established by Article 3540 applies to bonds, unless, of course, there has been some acknowledgment or other interruption. However, Article 3518 of the Revised Civil Code of Louisiana provides that a legal interruption of prescription takes place by citation before a court of justice, and whether the court is one of competent jurisdiction or not. Although this Article applies by its terms, when taken literally, to an interruption of prescription acquirendi causa, Article 3551 declares that the prescription releasing debts is interrupted by all such cases as interrupt the prescription by which property is acquired.

■ A legal interruption results from a citation to appear before a court, whether competent or not, on account of the right, claim, or possession to which the prescription would attach. The rule applies to prescription liberandi causa and causa acquirendi. Prall v. Peet's Curator, 3 La. 274; White v. McQuillan, 12 La. 530; Flower v. O'Connor, 17 La. 213; Hill v. Barlow, 6 Rob. 142.

By Act 39 of 1932 (Dart's Statutes, Section 2062.1), the filing of a suit in a court of competent jurisdiction shall interrupt all prescriptions affecting the cause of action sued upon. All of the parties here, including the opponent, have accepted the jurisdiction of this court.

The filing of suit has the effect of interrupting prescription. Long v. Chailan, 196 La. 380, 199 So. 222.

■ It is evident, therefore, that there could be no basis whatsoever for the motion to dismiss this action and the proposed distribution of funds on the ground of prescription of the bonds sued on by plaintiff. On the face of the pleadings and by the fact that suit was filed December 29, 1939, fifteen of the twenty-three bonds sued on, and all of the coupons, are of such dates that any prescription that might have otherwise run upon them was clearly interrupted by the filing of this suit. Opponent has offered no evidence to contradict the pleadings and the record in these respects. It is plain, therefore, that he is not entitled to dismiss either the action or the judgment or order of distribution. One who pleads prescription must prove the facts necessary to sustain his plea. Phipps v. Snodgrass, 31 La.Ann. 88. To sustain the plea of prescription, the proof must be clear. White v. White, 50 La.Ann. 104, 23 So. 95. Burden was on defendant to sustain his plea of prescription against notes sued on. Commercial National Bank v. McDaniel, La.App., 156 So. 43.

The only question that perhaps remains is whether or not he could seek to have the distribution modified by elimination therefrom of the eight bonds, three maturing on June 1, 1929, three on June 1, 1930, and two on June 1, 1931. Opponent has not sought this relief in any specific manner, and it could be considered only under the general prayer of his motion, "for full and general relief," if it could be granted at all.

■ II. Although opponent's plea is contrary to the equities, in that as holder of

two of a series of bonds, he is seeking to prevent payment of other bonds of the same series still outstanding; and although opponent must, in order to sustain his plea of prescription, establish clearly the facts that would justify it, nevertheless it is the general rule that any creditor, having an interest that prescription should be acquired by his debtor, may plead it; and this, whether liberandi causa or causa acquirendi. Revised Civil Code of Louisiana, Article 3466; Larthet v. Hogan, 1 La.Ann. 330; Succession of McGill, 6 La.Ann. 327; Jones v. Jones, 51 La.Ann. 636, 25 So. 368. In Walker v. Simon, 21 La.Ann. 669, the Supreme Court of Louisiana held that an intervenor must establish a sufficient interest, before he can plead prescription as against plaintiff's demand.

 Prescription is a defense which must be pleaded and as to which there must be a hearing, since the defense may be waived. White v. Davis, 169 La. 101, 124 So. 186.

Consequently, although ordinarily prescription is a defense which the debtor alone may plead or waive, as he sees fit, nevertheless his creditor who can show that his interest would be benefited by the claim of another creditor being held prescribed, may under such circumstances plead prescription himself against that other creditor of his debtor.

 It also follows, however, in view of the rule that prescription may be interrupted by an acknowledgment of the debt before prescription has accrued, and the further rule that prescription may be waived and the obligation revived even after prescription has accrued by a written acknowledgment coupled with a promise to pay, and that such promise may be implied as well as express, that unless and until a creditor who can show he has an interest actually does plead prescription to the claim of another creditor against his debtor, the debtor may act in such a way that the plea of prescription cannot be sustained when it is filed. That is precisely the situation here.

III. Let us first notice a few facts and clear inferences established by the pleadings filed before any plea of prescription was filed by opponent.

The intervenor, Feibleman, has declared on seventeen bonds, all of which matured within less than five years before he filed his intervention on January 13, 1941.

Neither the plaintiff nor the intervenor have sued on any coupons due prior to June 1, 1936. All coupons attached to the bonds declared upon by the intervenor, dated June 1, 1935, or earlier, were paid by the defendant Avoyelles Drainage District No. 8 of the Parish of Avoyelles. The proceedings of the joint motion for part distribution to all unpaid bondholders are full proof of the fact.

All interest coupons attached to the bonds now sued upon by the plaintiff, and likewise all interest coupons attached to the bonds now sued upon by the intervenor, were paid by the defendant board through the interest coupons maturing June 1, 1935.

 It was still less than five years after June 1, 1935, when plaintiff filed its suit on December 29, 1939. When the coupons due June 1, 1935, matured, prescription had not yet accrued on any of the bonds sued upon by plaintiff, since under the prescription omnia rite acta, the defendant board had paid these interest coupons as they matured up to and including those due June 1, 1935, and since the payment of interest on bonds still unmatured admits the obligation to pay the principal of other bonds of the same issue which have already matured and to which no interest coupons are still attached.

 Payment of interest on note interrupts prescription. Agurs v. Putter, 19 La. App. 550, 137 So. 640, 140 So. 833; Heard v. Heard (La.App.) 149 So. 156. A partial payment is an acknowledgment of the debt and interrupts prescription. Holmes Co., Ltd. v. Hiller, 7 La.App. 590; American Furn. Co., Inc. v. Patterson (La.App.) 157 So. 174.

 This rule of interruption of prescription likewise applies where interest is paid on bonds, since the jurisprudence in all other respects connected with the subject of prescription assimilates a bond to a promissory note. It therefore follows that prescription had never accrued on any of the bonds sued upon by either plaintiff or intervenor, even on the bonds sued on by plaintiff which matured prior to June 1, 1936.

Similarly, it follows that all the bonds remaining outstanding and unpaid (seventy-two in number), and their interest coupons, are alive, not prescribed, due and exigible.

 IV. It may be that, under a doctrine which is to be found in some cases in

our jurisprudence, the payment of a coupon once attached to a bond does not constitute an acknowledgment of the debt represented by the bond and will not interrupt prescription on the latter, under the theory that the coupon is usually severed from the bond before collection and both are negotiable instruments. If this be the true doctrine, it is necessary for us to look further for other acknowledgments of the indebtedness represented by those bonds sued on by plaintiff which matured prior to June 1, 1936. The record is full of evidence of such acknowledgments.

In the stipulation of counsel for defendant and intervenor filed September 8, 1941, prior to the filing of the plea of prescription by opponent, are to be found admissions that the bonds and coupons sued on by the intervenor have been issued by the Avoyelles Drainage District No. 8, that there is no contestation as to their validity, and that they are past due and unpaid and are consequently in default. This judicial admission would clearly take these bonds and coupons out of prescription, even if it had accrued as to them.

We submit that a consideration of the answer to plaintiff's petition filed by the defendant board has admitted therein that all of the outstanding bonds of the series dated June 1, 1919, have been issued by the Avoyelles Drainage District No. 8, that there is no contestation as to their validity, and that (at the time the answer was filed, June 30, 1941) all of these outstanding bonds of this issue, in principal and coupons representing interest, had become past due and unpaid and were and are, consequently, in default.

The following paragraph near the end of the answer by the defendant drainage district is a revival of the whole obligation, even if prescription has run on a part, because it is a written acknowledgment (of judicial dignity), coupled with a promise to pay:

"Further avers that this Board having exhausted all means to make such adjustment now understands and avers that the only course under the law is to prorate the present funds among the bondholders as pointed out by the Supreme Court of the State of Louisiana in Board of Commissioners v. Wilkins [County], 125 La. page 127, [51 So. 91]; that such an order or judgment of this Honorable Court might be carried out."

This averment, we repeat, shows a definite acknowledgment of the validity and obligation of the bonds and coupons still remaining outstanding and unpaid of this series of June 1, 1919, made judicially long prior to the filing of opponent's plea of prescription.

It is true that in allegations IV, V and VI of the answer, the defendant board alleges that it is without information to form a belief as to the truth of the averments of the corresponding articles of plaintiff's petition, in which plaintiff alleged its ownership of the bonds and coupons. However, many parts of the answer, and particularly the one quoted above, show that the averments of articles IV, V and VI of the answer are made merely to require plaintiff to prove ownership and that defendant admits the validity and its obligation to pay (to the extent of its ability out of present funds) all of the bonds of the series remaining outstanding.

In article VIII of the answer, after referring to a suit filed in the state district court of the parish of Avoyelles, defendant board alleges that the plaintiff in that suit had satisfied himself with regard to the "regularity of the levy, collection, management and preservation of its funds," referring to the levy, collection, management and preservation of the acreage tax imposed to secure this bond issue and dedicated to its payment. In the same article, and in articles IX, X and XI of its answer, defendant board refers in detail to its efforts to adjust its affairs with the bondholders when it found that it could not pay all in full for their bonds and coupons; alleges that during the years 1936 to 1939 efforts were being made by the defendant district to satisfy all bondholders under the existing circumstances; and alleges the passage of various resolutions looking towards refunding the bonds outstanding, which resolutions clearly and necessarily implied an acknowledgment of the indebtedness evidenced by the outstanding bonds and coupons and a promise to pay them, in whole or in part, by refunding.

These allegations of the answer show that the plan to refund through the Reconstruction Finance Corporation required the cancellation of the full outstanding bond issue of the District, that all proceedings were perfected, and that the refunding failed only through the inability of the defendant district and others interested to locate the holder of four bonds aggregating $2000. The fact of this failure due solely

to the requirement of the Reconstruction Finance Corporation and through no fault on the part of the board or of the holders of outstanding bonds and coupons, should not be deemed to lessen the acknowledgment of its indebtedness to the holders of outstanding bonds and coupons of the series of June 1, 1919, made by the board, or the effect of its promise to pay such holders; but this acknowledgment and this promise should be deemed sufficient to take all of the bonds of this series and the coupons attached out of any prescription which might have already accrued prior thereto.

The efforts to refinance were several, all of them importing an acknowledgment of indebtedness and a promise to pay. The allegations of the answer referred to show that these efforts took place at least as early as 1936 and continued into 1939.

There is other evidence in the record substantiating the points just referred to and giving more specific detail about the acknowledgments of the validity of indebtedness to these holders of bonds and coupons contained in various resolutions of the board. There have also been offered in evidence copies of letters written by or for the board, in which its difficulties because of adjudication of properties subject to the acreage tax to the state and the legislation enacted in Louisiana permitting redemption of these properties by the tax debtors without payment of taxes of intervening years, are set forth. Its indebtedness to the holders of various of the bonds was acknowledged even before any prescription herein contended for by opponent could have accrued, and its many plans to meet its obligations evidenced by these bonds are set forth.

 Acknowledgment of a debt will interrupt the course of prescription, but a mere acknowledgment of the existence of the debt will not operate as the renunciation of an acquired prescription. Succession of Slaughter, 108 La. 492, 32 So. 379, 58 L.R.A. 408. "There must be a new promise made to pay the debt in order to nullify an accrued prescription." Burdin v. Burdin, 171 La. 7, 129 So. 651, 655, and authorities cited; Waterman v. Dupeire, 180 La. 320, 156 So. 405, 406. An acknowledgment or promise must be made either to the creditor or to some one acting for him, or to some third person with intent that it be known by and influence the action of the creditor, in order to take a case

out of the statute of limitations. Cunkle v. Heald, 6 Mackey 485, 17 D.C. 485.

The judicial admissions of the board are binding on it and, by themselves, are sufficient ground for overruling opponent's plea of prescription. The correspondence of the board was clearly intended to be known by and influence the action of all the holders of outstanding bonds.

 There is no provision under Louisiana law for the appointment of a receiver, or other administrator in insolvency proceedings, of a drainage district. The Board of Commissioners of Avoyelles Drainage District No. 8 of the Parish of Avoyelles continue to be the administrator of its affairs, even though its inability to pay, out of funds in hand, the outstanding bonds and coupons of the issue of June 1, 1919, is admitted, and has been admitted for some years. Under these circumstances the board is in the position of a receiver.

The situation presented by the plea of prescription filed by opponent presents a striking similarity to the situation presented by the similar plea filed by one of the creditors in the receivership proceedings of Picard v. Geismar, Ltd. In International Shoe Co. v. Picard & Geismar, Ltd., D.C., 30 F.Supp. 570 (the same organ for the court as here), it was held that, although the appointment of a receiver or the existence of a receivership does not operate to interrupt the running of prescription on claims against the corporation for which the receiver was appointed, nevertheless, the filing of claims with the receiver who had been appointed suspended prescription as to claims so filed in that it placed each creditor on a legal parity with the original creditor by suit, and also that the correspondence by the receiver with various creditors, definitely and accurately fixing their claims, constituted the continued and repeated acknowledgment of the debt by the debtor to the creditor and thus interrupted the running of prescription. We quote a part of the opinion (30 F.Supp. 576):

"For further illustration of the above reasoning, we quote below several annotations found under Article 3520 of Dart's edition of the Civil Code of Louisiana. The article reads as follows:

" 'Prescription ceases likewise to run whenever the debtor, *or possessor*, makes acknowledgment of the right of the person

whose title they prescribed.' (Italics by the court)

"Quoting the annotations:

" 'Acknowledgment by Third Person.

" 'Executor's acknowledgment of succession debt suspends its prescription while succession property remains in executor's possession. Johnson v. Waters, 111 U.S. 640, 4 S.Ct. 619, 28 L.Ed. 547.

" 'A tutor, curator or other administrator may acknowledge a debt so as to interrupt prescription. Executors of Morgan v. Métayer, 14 La.Ann. 612.

" 'The written acknowledgment, or judicial admission of a judgment debt of a succession, made by the executor, will interrupt prescription. Succession of Patrick, 30 La.Ann. 1071.'

"The Louisiana books are replete with cases verifying the doctrine, from the early case of Renshaw v. Stafford, 1878, 30 La. Ann. 853, to that of Succession of Willis, 1903, 109 La. 281, 33 So. 314."

In the instant suit, the judicial acknowledgments by the defendant, and particularly the effect of the answer filed, *before prescription was pleaded by opponent,* in admitting the validity of the outstanding bonds and coupons of the series dated June 1, 1919 and the promise of the defendant board to pay those bonds and coupons to the extent of its ability out of funds in hand, are analogous.

The decision was affirmed by the Court of Appeals for the Fifth Circuit in Mayer v. Gros, 5 Cir., 116 F.2d 733. We quote the following paragraph as particularly pertinent here (116 F.2d 735, 736):

"The receiver testified without contradiction that after the filing of the auditor's report he recognized as creditors of the corporation all persons and firms whose claims were listed by the auditor; that from time to time during the pendency of the receivership he sent letters to all these creditors advising them of the status of the receivership; and that on many occasions he discussed the situation with creditors and their attorneys. In equity receivership creditors whose debts have been recognized need not bring suits to establish their claims. The claims of creditors who did not file suits or intervene in this proceeding were not barred. Richmond v. Irons, 121 U.S. 27, 7 S.Ct. 788, 30 L.Ed. 864; Johnson v. Walters, 111 U.S. 640, 4 S.Ct. 619, 28 L.Ed. 547; Russell v. Todd, 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754; E. C.

Palmer & Co., Ltd. v. Louisiana Printing Co., 192 La. 757, 189 So. 126; Renshaw v. Stafford, 30 La.Ann. 853, 856."

■ VI. Counsel for opponent cite as authority for the sustaining of the plea of prescription and the granting of the motion to dismiss, the case of Littlefield v. City of Shreveport, 148 La. 693, 87 So. 714. In that case it was held that under Article 3540 of the Louisiana Civil Code, where the City of Shreveport had issued its bonds payable October 1, 1879, with interest at eight per cent per annum, pledging its faith and property to performance of the obligation, and ordering a tax to be levied annually to pay interest and to create a sinking fund, prescription began to run against suit on such bonds on October 1, 1879, their due date, and that the failure of the City to provide the promised sinking fund did not prevent such running of prescription, that failure being mere passivity which cannot arrest the course of prescription. The decision also rested on the point that, under Article 3550 of the Civil Code, good faith is not required on the part of the person pleading prescription.

There is a vast difference between the facts in the Littlefield case and the facts in the case at bar. In the Littlefield case, a pledge was promised by the City of Shreveport but never actually carried out. In the case at bar the proceeds of the acreage tax levied and collected to meet payment of the bonds and coupons of the issue under consideration were pledged and dedicated, in accordance with law and the resolutions of the defendant board to the payment of the bonds and coupons. In paragraph XIV of the petition, plaintiff avers that the defendant has annually since the year 1920, through and including the year 1939, levied and collected taxes specially dedicated to the payment of the principal and interest of these bonds. The article of the Constitution, Acts of the Legislature and the resolutions of the Board of Commissioners of the Avoyelles Drainage District No. 8 of the Parish of Avoyelles referred to in the body of each of the bonds of this series (see paragraph II of plaintiff's petition) show that the dedication and pledge alleged by plaintiff in paragraph XIV were legal and duly authorized and were made. Indeed, all of this and the fact that the taxes were collected and that at least a part of these taxes have, presumably, been on hand at all times in the custody of the defendant board, and that a substantial balance is still

thus on hand, pledged and dedicated to the payment of the outstanding bonds and coupons of this series, are fully borne out by the answer of defendant, by the joint motion of plaintiff, intervenor and defendant for a partial distribution, and by the judgment of the court.

The wrong done by the City of Shreveport cannot be taken advantage of in the case at bar in view of the fact that the Avoyelles Drainage District No. 8 fulfilled its pledge. This dutiful action has constituted an uninterrupted preservation of its pledge and dedication and this amounts to a continuing acknowledgment of the whole debt evidenced by the bonds and coupons of the series and has had the effect of a continuing interruption of a prescription.

Of the original issue of 150 bonds, 78 are now paid; the order of the court, now being opposed, is to pay 42% on the 72 bonds remaining unpaid.

A case citing the Littlefield case and following it, and equally inapplicable here, is Morrissey v. Police Jury of Vermilion Parish (La.App.) 13 So.2d 744, 745.

 The pledgor himself may be in some cases the detainer ad hoc of the pledge for account of the pledgee; prescription does not run during the existence of a pledge. Conger v. City of New Orleans, 32 La.Ann. 1250. It is true that the court also held that when the pledgor, under these circumstances, has sold the property pledged it cannot be held that prescription of the debt remains interrupted by the existence of the pledge.

Chief Justice Bermudez said, in the Conger case (32 La.Ann. 1252, 1253):

"Possession, though essential to the validity of the pledge, need not be always in the creditor. It is sufficient that the thing pledged be in the possession of one occupying ad hoc, the position of a trustee. The debtor himself may, in some cases, be considered as such trustee and be given possession of the thing by him pledged, provided his tenure be precarious and clearly for account of the creditor. The Louisiana doctrine is in·perfect accord with both the common, the Roman and French laws." (Many authorities cited in the opinion, are omitted here.)

"So that it is not correct to say, that the statutory pledge in this case (the stock remaining in the hands of the city) is not a valid pledge, and would not interrupt pre-scription, see (United States v. New Orleans) 98 U.S. [381], 396 (25 L.Ed. 225), because not in the hands of the creditors."

In a recent decision, Reconstruction Finance Corporation v. Holloway, 191 La. 583, 186 So. 35, the Supreme Court of Louisiana said (186 So. 37):

"It is the settled jurisprudence of this State, that prescription does not run during the existence of a pledge. Wilson v. Bannen, 1 Rob. 556; Montgomery v. Levistones, 8 Rob. 145; Latiolais v. Citizens' Bank, 33 La.Ann. 1444; *Conger v. City of New Orleans, 32 La.Ann. 1250,* and many other cases." (Emphasis ours.)

Again, still more recently, in Pelican State Bank v. Bogle, 202 La. 721, 12 So.2d 793, the Louisiana Supreme Court held that if a debtor gives something in pledge to the creditor to secure the payment of the debt, prescription does not run against the debt so long as the creditor retains the thing in pledge, with consent of the debtor, citing the Conger case and many other authorities in support of this proposition.

In the case at bar, the debtor, Avoyelles Drainage District No. 8, as detainer ad hoc of avails of taxes pledged and dedicated to the payment of the bonds of the series of June 1, 1919, has continued to make that acknowledgment of the right of the holders of the outstanding and unpaid bonds and coupons which interrupts the running of prescription under the provisions of Article 3520 of the Louisiana Civil Code, reading as follows:

"Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribed."

 VII. Writ of. mandamus. By his petition for a writ of mandamus, Neville attempts to obtain from the court an order upon the defendant, Avoyelles Drainage District No. 8, commanding it to pay Neville as relator in that petition and by preference and priority over all other claims in this matter, the amount of the two bonds of the district which he holds and certain coupons attached thereto, or else to show cause to the contrary. The petition for mandamus plainly seeks an unjust and illegal preference.

Particularly if the plea of prescription fails, and it should be dismissed for the reasons pointed out above, there is no rea-son why payment of the two bonds held by

Neville should be made ahead of payment of any of the other bonds.

Mandamus properly issues to direct the performance of a purely ministerial duty, and this means a duty which is so clear and simple that it does not call for the exercise of judgment and discretion by the officer or body at whose hands performance is required. La.Code of Practice, Arts. 829, 834; State ex rel. Daboval v. Police Jury, 39 La.Ann. 759, 2 So. 305; Badger v. New Orleans, 49 La.Ann. 804, 21 So. 870, 37 L.R.A. 540.

Not only is there no semblance of the existence on the part of Avoyelles Drainage District No. 8 of a purely ministerial duty to pay Neville the full amount he claims, but for the Drainage District to make this payment would clearly be an illegal preference in favor of the holder of two bonds which rank equally with all the other outstanding bonds of the same issue. No evidence has been submitted in support of the petition for mandamus to show that Neville is entitled to any preference.

Under these circumstances the authorities cited do not support the prayer for the relief sought. Rather, as the Supreme Court of Louisiana said in the case of State ex rel. Howard v. Burbank, 22 La.Ann. 298, of a petition for a writ of mandamus to compel a public officer to pay a sum of money out of funds to be thereafter received by him, we should say of the petition of Neville for a writ of mandamus herein, "The proceedings in this case are extraordinary and anomalous" (22 La.Ann. at page 299).

The principle followed by the Supreme Court of Louisiana in dismissing the application for the writ of mandamus in the Howard case, is applicable here. In the case cited, it was stated in the following language (22 La.Ann. at page 300):

"And the law never contemplated that one creditor should get a preference over another by applying for a writ of mandamus to command an officer to pay a sum of money out of funds to be thereafter received by him. This is a degree of diligence not favored or countenanced by the law."

The conclusion of the Supreme Court of Louisiana is based on the unwillingness of the law to favor one creditor over another by allowing him to use the extraordinary remedy of mandamus to gain a preference.

It is particularly applicable under such facts as we are now considering, where the record plainly discloses that the defendant against whom the mandamus is sought does not have sufficient funds to pay all creditors of equal rank in full.

In State ex rel. Merle v. Dubuclet, 26 La.Ann. 127, the Supreme Court of Louisiana said (page 131):

"All men are equal before the law, and all men, having equal claims upon the State for the payment of a common debt, have equal rights upon the common treasury."

In the case just cited, a mandamus was directed to the State Treasurer, commanding him to pay the warrants annexed to the relator's petition, out of any funds in the treasury appropriated for that purpose, without any reference to any injunctions to the contrary that might have been issued to him. However, this mandamus was granted to the relator, Merle, because the Court found that the business of the State Treasury Department had been conducted in the interest of certain other holders of warrants and that, in effect, they had been given an illegal preference and priority over the relator by receiving payment of their warrants when relator was repeatedly refused payment of his on the excuse that there were no funds to be used for that purpose and that the State Treasury was restrained from making payment to him by decrees of court rendered between other parties. The Supreme Court of Louisiana has sanctioned the use of mandamus directed to a public officer to *prevent* a preference among creditors, but never to *grant* a preference.

The authorities cited by counsel for Neville do not support his position. In State ex rel. Smit v. Lafayette Building Association, 147 La. 526, 85 So. 228, it was stated to have been repeatedly held that mandamus is the proper proceeding to control the proceedings of corporations. This is certainly true, but the case is not in point; the decision merely enforces the duty of a private corporation to transfer stock standing in the name of one deceased to a true owner. All this has no bearing on whether or not a drainage district is under a duty to pay the holder of two bonds of a certain issue by preference and priority over a holder of other bonds of the same issue, even where the one seeking such preferential treatment has obtained a judgment.

In State ex rel. Sewerage and Water Board v. Commission Council of City of

New Orleans, 151 La. 938, 92 So. 392, the Supreme Court of Louisiana in its original decision granted a mandamus to compel the City to appropriate sufficient money to the use of the relator board requisite for maintenance and operation of its drainage system—all under legislation interpreted by the court as so requiring.

In State ex rel. Perry v. Board of Drainage Commissioners (La.App.) 151 So. 141, also cited by counsel for Neville, the Louisiana Court of Appeal for the Parish of Orleans said (page 144):

"There is no doubt whatever that a public board or commission, which has collected money which by law is dedicated to a particular purpose, may, by mandamus, be compelled to devote that money to that purpose. In 2 Bailey on Habeas Corpus and Special Remedies, page 1065, appears the following:

" 'Mandamus is the appropriate remedy to compel municipal authorities to pay to a "bona fide" holder of municipal bonds the money that has been collected pursuant to law for the purpose of meeting the payment of such obligations, where such authorities refuse.' "

In the Perry case a mandamus was issued to compel payment in full to Perry of the amount he sought to be paid, because there were sufficient funds to the joint credit of the district and of a certain bondholders' committee but belonging to the district, after payment of a pro rata distribution agreed to by other bondholders, for payment in full to Perry, who had not entered into the agreement. The money ordered to be paid to Perry was found to be dedicated to the payment that was ordered by the mandamus to be made, and could not be considered the subject of a common pledge or dedication by the defendant Board of Commissioners for the Fourth Jefferson Drainage District to all of the holders of the series of bonds under consideration in the case cited. Those who entered into the agreement through the bondholders' committee had estopped themselves by receiving their pro rata distribution from making any further claim upon the fund; and there was enough left in the fund to pay all bondholders who had not joined in the agreement.

Under the facts the case is not applicable. The money in the case at bar is not dedicated to pay the two particular bonds and coupons attached belonging to Neville, but to all the seventy-two bonds and coupons. There is no proof otherwise in this record. In view of the order or judgment of distribution signed by this court on joint motion of plaintiff, defendant and the intervenor, Feibleman, the fund is in custodia legis and should not be depleted in a manner contrary to law and equity.

Under the circumstances of the Perry case, the money he sought to be paid was by law dedicated to the purpose of paying him in full; under the circumstances of the case at bar, the fund now subject to the orders of this court is the common pledge of all of the bondholders, and it would be contrary to justice and equity for it to be depleted for the special benefit of one bondholder.

It is unnecessary to notice in detail the other authorities cited by counsel for Neville in support of the application for mandamus. They are inapplicable to the situation here presented.

We are impressed with the honesty of the members of the board of commissioners of the drainage district and of the taxpaying landholders they represent, by the fact that they do not now, or ever did, make the attempt to plead prescription of the debt for the district.

This fact distinguishes strikingly and fundamentally the instant case from the Littlefield—Shreveport case, supra, wherein the city of Shreveport itself pleaded prescription. Not that we mean that the city of Shreveport favored the dishonest thing, but it was the want of value received that actuated its plea. Therefore, value received for the bonds in the instant case is to be inferred.

The defendant drainage district, by filing an answer and a brief, has placed at issue the application by Neville for a writ of mandamus; it has not pleaded on the plea of prescription filed by opponent.

We agree with the following contentions made by the district:

(a) If Neville be a bondholder, the court has ruled with reasons hereinabove that his plea of prescription against other bondholders falls.

(b) In the alternative, then, he seeks payment by writ of mandamus on his judgment. He is an ordinary judgment creditor. He has merged his two bonds into a money judgment and does not show that the district has any funds out of which it is permitted by law to pay this judgment.

There are no funds with the drainage district which are not dedicated to the special purpose of paying the bond issue. The dedication of the taxes to the payment of the bonds and interest is a "sacred trust", and only administrative expenses, necessary to the bare legal existence of the district, are permitted. See Sections 24, 25, and 26 of Act 256 of 1910.

(c) We quote the substance of paragraph "2." of the district's answer:

"Even if he be still the owner of the two bonds notwithstanding his judgment, he may not obtain from the funds on hand, more than his pro rata portion, for the reason that all the bonds outstanding exceed the amount on hand or to be distributed and no one may receive the entire payment of his bonds, since such procedure results in depriving other bondholders of equal rank of their just part."

See State ex rel. Fidele Eugster v. City of New Orleans, 36 La.Ann. 726.

"Want of funds is a complete answer to a petition for mandamus to compel governing authority of a political corporation to pay a judgment against the corporation, unless the corporation has authority to collect revenues with it to pay the judgment. * * *

"The decree commanding the defendant board to pay the judgment adds nothing to the original judgment, which ordered the defendant board to pay the amount of the judgment, with interest and costs. The mandate to take such steps as are incidental and necessary to enable the board to pay the judgment is also unenforceable and without effect, because it leaves it optional with the members of the board to do whatever they may deem necessary. As a matter of fact, the board of commissioners had no funds with which to pay the judgment, at the time the suit was tried." State ex rel. Ascension Red Cypress Co. v. New River Drainage District, 148 La. 603, 87 So. 310.

For the reasons above, singly, cumulatively, in part or in whole, we overrule and dismiss the motion to dismiss and the plea of prescription of opponent, Neville, at his cost; and, further, we rule that the alternative writ of mandamus, also prayed for by Neville, should be refused and dismissed at his cost. Further, the distribution ordered on joint motion of plaintiff, intervenor (Feibleman), and defendant, should then be made forthwith, in accordance with the judgment rendered and signed by us on October 19, 1944, and filed in the record on October 20, 1944.

To follow, then, for trial will be the original issue of this case as to whether or not additional annual acreage taxes are to be levied and collected by the district, etc., in order to pay the final balance due on the bond issue.

Upon presentation we shall sign formal judgment in conformity with the above opinion.